[L. A. No. 4854.   In Bank.—June 6, 1917.]

## In the Matter of the Estate of MARIA CAMPBELL, Deceased.

WILL — VALID TRUST ESTATE FOR LIFE — BEQUEST OF REMAINDER FOR CHARITABLE PURPOSES—EXCESSIVE BEQUEST TO CHARITY—DISTRIBUTION.—The testatrix by her will gave all her property upon a valid trust to continue until the death of her son, on the happening of which event it was expressly declared the trust should cease. The trustee was authorized, during the continuance of the trust, to manage the property, and to pay the net income to the son, after paying a small sum monthly to the housekeeper of the testatrix. If

the latter died before the son, the monthly sum theretofore paid her was to be paid to the son. The trustee was also directed to use, in addition to the income, such portions of the principal as he might deem necessary for the support of the son. This constituted the whole of the trust upon which the property was bequeathed to the trustee. The will further provided that upon the termination of the trust, if the son left lawful issue surviving, all the property should immediately vest in such lawful issue, provided the housekeeper was not then alive, and if the latter did survive the son, then one thousand dollars should vest in her and the remainder in the son's lawful issue. If the son died without lawful issue, but leaving a surviving wife, then one thousand dollars was to vest in the housekeeper, and one-fourth of the remainder in the surviving wife, and the other three-fourths in a designated corporation conducting a hospital. In the event the son died without leaving lawful issue or surviving wife, one-fourth was to vest in the housekeeper and the remaining three-fourths in the hospital, provided that if the housekeeper did not survive the son, her share was to vest in the hospital. *Held*, that the disposition in favor of the hospital was no part of the trust, and even if such disposition were invalid to the extent that it was in excess of the one-third of the estate that could be bequeathed to charity, under section 1313 of the Civil Code, the son was not entitled to have two-thirds of the property distributed to him free of the trust.

ID.—TIME FOR DETERMINING VALUE OF CHARITABLE BEQUEST.—Whether or not such charitable bequests are in excess of one-third in value of the distributable assets of the testatrix cannot be determined until the termination of the trust.

ID.—DISTRIBUTION OF TRUST ESTATE—RESERVATION OF DISTRIBUTION OF CHARITABLE BEQUEST.—All the property of such estate should be distributed to the trustee for the purposes of the trust, reserving the matter of further distribution until the termination of the trust, at least in so far as the charitable bequest is concerned.

APPEAL from a decree of the Superior Court of Los Angeles County partially distributing the estate of a deceased person. James C. Rives, Judge.

The facts are stated in the opinion of the court.

Isidore B. Dockweiler, Thomas A. J. Dockweiler, and W. D. Finch, for Appellant.

Earle M. Daniels, and Julius V. Patrosso, for Respondent.

ANGELLOTTI, C. J.—This is an appeal by Isidore B. Dockweiler, as trustee under the will of Maria Campbell,

deceased, and by the Los Angeles Infirmary, a corporation, as legatee under said will, from a decree of partial distribution whereby there was distributed to Jose Boniface Arzaga substantially an undivided two-thirds of the property of the estate of said deceased. The theory upon which this distribution was made was that as to such property the attempted disposition made by the will of deceased was ineffectual and void under our law, with the result that as to the same the deceased died intestate, and that said property passed to said Jose Boniface Arzaga, the sole surviving child and sole heir of said deceased.

Deceased died August 14, 1913. Her will executed April 23, 1913, gave all her property to Isidore B. Dockweiler in trust for certain purposes specified therein. Substantially stated the material provisions as to the trust were as follows: The trust was to continue until the death of her son, Jose, on the happening of which event it was expressly declared that "the trust hereby created shall cease and determine." The trustee was fully authorized during the continuance of the trust to care for, preserve, and manage the property, and in the event that the net income was at any time insufficient for the proper care and support of the son, to use such portion of the principal as he deemed necessary for that purpose. During the existence of the trust he was required to distribute and pay out the net rents, issues, profits, interest, and dividends of the estate, as follows: Ten dollars per month to her housekeeper, Eulalia Marquez, as long as her son, Jose, shall live, and the remainder to or for the use and support of her said son. If said Eulalia Marquez died before her son, then the monthly ten dollars theretofore paid her was thenceforth to be paid to or for the use and support of said son. This constituted the whole of the trust upon which the property was bequeathed to the trustee. It was then provided in apt terms what should become of the property upon the termination of the trust, and to whom it should belong. These provisions were substantially as follows: If the son, Jose, left lawful issue surviving him, all of the property "shall immediately vest" in said lawful issue, provided said Eulalia Marquez be not then alive, and if the latter did survive the son, then one thousand dollars shall vest in her, and the remainder in the son's lawful issue. If said son died without lawful issue, but leaving a surviving wife, then one thousand

dollars shall vest in said Eulalia Marquez, and one-fourth of the remainder in said surviving wife and the other three-fourths in the Los Angeles Infirmary, a corporation conducting a hospital in Los Angeles, for the purpose of founding, endowing, and maintaining free beds for deserving sick poor. If said son died without leaving lawful issue or surviving wife, one-fourth shall vest in said Eulalia Marquez and the remaining three-fourths in said Los Angeles Infirmary for the purpose above stated, provided that if said Eulalia Marquez did not survive the son, her share shall vest in said Los Angeles Infirmary. The will further provides: ''The invalidity of any use or trust herein declared, if ever decreed by a court of competent jurisdiction, shall not vitiate such as are valid.''

According to the agreed statement of facts dated January 20, 1916, found true by the lower court, the following facts appear: Deceased died, as has been said, August 14, 1913. Her estate consisted entirely of personal property. The son, Jose, sole heir at law, attained the age of thirty-one years on June 5, 1915. He is married, his wife, Margaret L. Arzaga, being thirty-two years of age. There is as yet no lawful issue of such marriage. Said Eulalia Marquez is alive, and is in her forty-seventh year of age. The present value of the estate is, according to the findings of the court, $15,379.48, out of which $250 for a monument is to be paid. The present value of the bequest to the Los Angeles Infirmary according to the American Experience Table of Mortality, with interest at five per cent, is, under the conditions most favorable to it, viz.: The death of the son without leaving either lawful issue, a wife, or Eulalia Marquez surviving him, less than four thousand dollars.

Section 1313 of the Civil Code, after prohibiting bequests or devises to any charitable or benevolent society or corporation, or to any person in trust for charitable uses, except by will ''duly executed at least thirty days before the decease of the testator,'' declares: ''And if so made, at least thirty days prior to such death such devise or legacy and each of them shall be valid; provided, that no such devises or bequests shall collectively exceed one-third of the estate of the testator, leaving legal heirs, and in such case a `pro rata` deduction from such devises or bequests shall be made so as to reduce the aggregate thereof to one-third of such estate; and all dispositions of property made contrary hereto shall be

void, and go to the residuary legatee or devisee, next of kin, or heirs, according to law.'' It was upon the theory that the provisions as to the vesting of all the property in the Los Angeles Infirmary upon certain contingencies, and three-fourths thereof upon certain other contingencies, were void as to two-thirds of the property, as being in violation of this section, and that as a result thereof, the son, as sole heir, there being no residuary legatee, was entitled at once to take such two-thirds, that the distribution complained of was made to him.

1. It seems clear to us that even if it be conceded that the disposition in favor of the Los Angeles Infirmary is invalid to the extent stated, nevertheless the son was not entitled to have the property distributed to him free of the trust. Such disposition in favor of the Infirmary was no part of the trust, but a thing entirely apart from and independent thereof. As in *Hornung* v. *Sedgwick*, 164 Cal. 629, [130 Pac. 212], the provisions as to the disposition of the *corpus* upon the death of the son constituted no part of the trust and were solely by way of prescribing to whom the property to which the trust related should belong upon the termination of the trust, and of a bequest of the property subject to the execution of the trust. The trust for the benefit of the son *and* Eulalia Marquez for the life of said son was in all respects valid, and by its terms the trustee was to hold all of the property until the happening of the event which would terminate the trust, viz., the death of the son. The attempted bequest was subject to this trust. If such bequest was to any extent invalid by reason of the provisions of section 1313 of the Civil Code, it may be conceded that the heirs of the deceased would succeed to the interest as to which the invalidity existed, but manifestly they could take no other or different interest than the Los Angeles Infirmary was given by the will. All the property of deceased other than such interest was otherwise effectually disposed of by the will, and it was only as to this interest that any invalidity can be fairly claimed. The bequest to the Los Angeles Infirmary was also entirely contingent upon the death of the son without lawful issue surviving him, and in part contingent upon his death without leaving a wife surviving, and it was wholly subject to the complete execution of the trust. An heir succeeding by reason of the invalidity in part of this bequest under section 1313 of the Civil Code could

take nothing different or greater. There is no failure to dispose by will as to anything else. The paramount trust would necessarily exclude such heir from enjoyment of any of the property until its termination, i. e., until the death of the son; and by virtue of other provisions of the will he would then take only in the event of the death of the son without leaving lawful issue surviving.

The decree as made destroys the valid paramount trust to the extent of two-thirds of the property of deceased, and cuts out the valid bequest to possible surviving lawful issue of the son to the same extent, as well as the bequest to the possible surviving wife of the son, who may or may not be the present wife. It cannot be sustained upon any principle or rule of law of which we have knowledge.

The contention of respondent is that by the scheme embodied within the terms of the will more than one-third of the estate is devised to a charitable corporation, and that as a necessary consequence the devise of the entire estate to Dockweiler, trustee, to effectuate and carry out the purpose thereof is void as to two-thirds of the estate so devised in trust, and that consequently, there being no residuary legatee, the testatrix died intestate as to this portion. As we have seen, the disposition to the Infirmary is no part whatever of the trust, and the devise to Dockweiler is in no sense one, "to effectuate and carry out" the same. It was entirely competent under our law for the deceased to create this trust for the benefit of Eulalia Marquez and her son, for the life of the latter, and it, being a valid trust as to *all* the property, must stand regardless of any question of the invalidity in part of a bequest of what remains after the termination of the trust. So far as this particular question is concerned, respondent's case can be no stronger than it would have been had the will failed to contain any provision whatever as to the succession to the property upon the termination of the trust. In that case his succession as sole heir on the theory that deceased died intestate in part would necessarily have been subject to the trust for his life in favor of himself and Eulalia Marquez as to all the property.

There is no decision in this state contrary to the views we have expressed, and in none of the cases cited by learned counsel for respondent does any such question appear to have been discussed. Under our statutes, the only disposition ren-

dered void by the statute is the disposition made to charitable purposes, and if that attempted disposition be subject to other effectual disposition of the same property, its invalidity cannot affect such other disposition—that is, at least, unless it constitutes part of a single and indivisible scheme, which, in our judgment, is not the situation here.

2. It is further claimed by appellant that it is not shown that more than one-third of the estate of testatrix is left by the will to the Los Angeles Infirmary. This court has held that, under section 1313 of the Civil Code, the one-third which may lawfully be given to charitable purposes is one-third of what remains after payment of debts and charges of administration, the value being ascertained as of the date of distribution. (*Estate of Hinckley,* 58 Cal. 457, 516.) The statute thus prohibits the giving to the Los Angeles Infirmary of more than one-third in value of the distributable assets of deceased. We have seen that the present value of the distributable assets is slightly over fifteen thousand dollars. We do not see how it is possible for a court to determine at this time that the will gives to the Infirmary more than one-third of this. It is true that under the will it does take, in a certain contingency, all that remains after the execution of the trust, and in another contingency three-fourths of all that remains. But what portion of the estate may so remain no one can foretell, and there is no basis for any ascertainment of that fact. All of the income of the property is to be devoted for the whole life of the son to the use and support of himself and Eulalia Marquez, and, as already stated, the trustee was directed to use, in addition to the income, such portion of the principal as he might deem necessary for the proper care, maintenance, and support of the son. The son had an expectancy of life of over thirty years. In view of the comparative smallness of the estate, two-thirds thereof might well be consumed for this purpose. There is no way of even approximately determining. It is all in the realm of conjecture. It is, in this respect, a similar case to that presented in *Rich* v. *Tiffany,* 2 App. Div. 25, [37 N. Y. Supp. 330], in which it was held that a computation must necessarily be deferred until the death of the life tenant, because no possible basis could be furnished therefor at any previous time. And even as to what may remain, no one can foretell whether the Infirmary will ever take anything at all, in so far as the beneficial enjoyment of the property is

concerned, for if the son die leaving lawful issue him surviving, a condition certainly quite within the possibilities, it will receive nothing. It would seem that, in view of these conditions, the proportionate value of the interest given to the Infirmary cannot be ascertained, and the only way in which the rights of all parties can be fully protected is at this time to distribute all the property to the trustee for the purposes of the trust, reserving the matter of further distribution until the termination of the trust, at least in so far as the charitable bequest is concerned. In view of what we have already said as to the paramount character of the trust in so far as any succession by the son is concerned, this result is in no degree unfair to him. It is the valid and paramount trust that excludes him as such successor during his life, and if he has in fact any interest in that capacity, as may hereafter be determined, it is an interest that he can convey or dispose of by will, and that, if he dies intestate, will pass to his heirs. Any such interest that he might now properly obtain by decree of distribution would be no different in this respect, as we have already seen. The valid trust precludes all else.

The statute simply precludes gifts to charity in excess of one-third of the value of the entire distributable assets. Surely it must be that a showing of bequests excessive under this statute is essential to an adjudication of invalidity and consequent succession by another. In view of the character of the bequest here, it is impossible to make any such showing at this time. Unless there be such excess there can be no intestacy. We cannot bring ourselves to the conclusion that the mere fact that attempted charitable bequests *may* in the future be ascertained to be excessive under the statute is sufficient to warrant a present conclusion that they are excessive, and therefore invalid in fact, and that consequently the residuary legatee or heir succeeds to a portion thereof.

3. Even if there were no right in the trustee to use the principal for the purposes of the trust, and if the right of the Infirmary to receive all of the property on the death of the son was fixed and certain, and not contingent upon the absence of lawful issue, its interest would be subject to the life estate or interest for the life of the son, vested in the trustee, for the sole benefit and enjoyment of Eulalia Marquez and the son. This life interest and the remainder constitute the whole of the property. In no contingency does the Infirmary

take it all, but at best only the whole remainder after the determination of the life interest. Can it be fairly held that such a remainder exceeds in value one-third of the distributable assets? According to the decision of the court of appeals of New York in *Hollis* v. *Drew Theological Seminary,* 95 N. Y. 166, the only way in which this can be ascertained in such a case as we have mentioned is by ascertaining the present value of the life interest and the present value of the remainder, which together should be the precise value of the distributable assets, and if the total value of the remainder does not exceed one-third of the total value, there is no violation of the statute. In this case there was no such showing of excess over one-third. In fact, as we have seen, the showing, so far as made, was to the contrary. But in view of the possibility of consumption of portions of the principal for the purposes of the trust, we have here no such case as the one suggested, and it is unnecessary to determine whether the rule declared in *Hollis* v. *Drew etc. Seminary,* 95 N. Y. 166, is the correct rule, under our statute, for determining the question of excess where the right of the legatee to succeed to a certain specified property upon the determination of a prior life estate or interest therein is fixed and certain.

The decree appealed from is reversed.

Sloss, J., Victor E. Shaw, J., *pro tem.,* Shaw, J., and Melvin, J., concurred.

HENSHAW, J., Concurring.—I concur. The Chief Justice clearly points out that the bequest to charity forms no part of the trust scheme and can take effect only on the determination of the trust. So, also, he shows the impossibility of any court declaring at this day the value of the property which on the happening of certain future contingencies the testatrix designed should go to charity. In addition to this is the perfectly plain proposition that our statute against charitable devises and bequests is and can be violated under these circumstances only when the devise or bequest *does* take effect and *at that time* is shown to be illegal for excess. When the contemplated contingency has arisen then, and then only, may the living parties in interest contest the bequest, for then, and then only, can it be determined whether or not the law has been violated.