[S. F. No. 9676. In Bank.—February 14, 1922.]

In the Matter of the Estate of CHARLES LOUIS SCRIMGER, Deceased. SAN FRANCISCO PROTESTANT ORPHAN ASYLUM SOCIETY et al., Appellants, v. J. C. FITZSIMMONS et al., Respondents.

[1] Estates of Deceased Persons — Wills — Bequest to Charity — Identity of Beneficiary.—Where a decree of distribution of the estate of a deceased person distributes the property to trustees to be held until the death of the mother or sister of the decedent, at which time the trust is to terminate and the property to vest in, among others, a charitable institution, formerly conducted by a corporation whose existence had terminated, but at the time of decree conducted by a new corporation, the decree should be construed as a distribution in trust for the new corporation then in existence, for it is clear that the real beneficiaries of the trust are the children in the institution and the appropriate custodian of the trust fund, upon the termination of the testamentary trust, the corporation operating the institution.

[2] Id. — Decree of Distribution — Determination of Meaning and Effect of Law.—A decree of distribution of the estate of a deceased person is a conclusive determination of the meaning and effect of the will, and the will itself cannot be looked to for the

purpose of interpreting the decree, except in so far as it is referred to and made a part thereof.

[3] EQUITY — FORM OF CORPORATION — WHEN IMMATERIAL. — Courts of equity look behind the corporate form to the persons behind that form where necessary for the purpose of doing justice.

[4] ID.—DOCTRINE OF CY PRES—OBJECT OF TRUST UNDER THE DOCTRINE OF CY PRES.—Courts of equity in this state have jurisdiction, derived from the English common law, to establish and enforce charities, when trustees competent to take the legal estate are named, and the class to be benefited and the individuals to be designated by the trustees are capable of ascertainment; and under said doctrine such orphan asylum is the proper object of the trust provided for in the decree of distribution.

[5] ESTATES OF DECEASED PERSONS — TRUSTS — SETTLEMENT OF ACCOUNT.—The objection to the final account of testamentary trustees that they violated the terms of the trust in paying certain expenses out of the *corpus* of the estate instead of out of the income before the termination of the trust cannot be sustained where these matters were settled in their first account.

[6] ID.—DUTY OF TRUSTEES AFTER TERMINATION OF TRUST—EXPENSES AND COMPENSATION.— It is the duty of trustees to care for the trust estate, even after the trust terminates, where there is a dispute as to the rights of the beneficiaries, until the matter is settled by the court having jurisdiction over the settlement of their final account.

[7] ID.—DECREE OF DISTRIBUTION — INVALID CHARITABLE BEQUESTS — REMEDY.—A decree of distribution made in accordance with the terms of a will is not void as to distributed charitable bequests which are invalid under the statute, even though such error appears on the face of the decree, since the court has jurisdiction to make an erroneous decree and the remedy is by appeal.

[8] ID.—CONSENT TO ERRONEOUS DECREE.—The mere fact that a decree of distribution was made in accordance with the terms of the will, notwithstanding the fact that the will was invalid as to charitable bequests, would not necessarily show that the decree was erroneous, as it might have been consented to by the persons who would otherwise be entitled to receive the trust estate and for that reason be valid.

APPEAL from an order of the Superior Court of Alameda County settling final account and directing distribution of a trust estate. E. C. Robinson, Judge. Reversed.

The facts are stated in the opinion of the court.

W. H. Barrows for Appellant, Roman Catholic Orphan Asylum of San Francisco.

Charles W. Slack and E. T. Zook for Appellant San Francisco Protestant Orphan Asylum Society.

Aaron Sapiro and Milton D. Sapiro for Appellant Pacific Hebrew Orphan Asylum and Home Society.

Fitzgerald, Abbott & Beardsley and Ben F. Woolner for Respondents.

WILBUR, J.—This is an appeal by the Roman Catholic Orphan Asylum of San Francisco, Protestant Orphan Asylum, and the Pacific Hebrew Orphan Asylum from the order of the superior court settling the final account of the trustees under the final decree of distribution in the estate and directing the distribution of that portion of the trust estate held by said trustees in trust for the Roman Catholic Orphan Asylum to a sister of the deceased, Kate McGavin.

On the 5th of January, 1911, a decree of distribution was rendered in the above-entitled matter whereby the residue of the estate, after the payment of specific legacies, was distributed to J. C. Fitzsimmons and Joseph E. Barry as trustees upon the trust provided in the will and set forth in the decree to hold the same until said trust shall terminate by reason of the death of the mother or sister of the deceased. The decree of distribution recites the provisions of the will as follows:

"Sixth: After the payment of all specified bequests . . . I give, devise, and bequeath to J. C. Fitzsimmons of Oakland . . . and Joseph E. Barry of said City and County of San Francisco . . . as Trustees, all my property and estate . . . in trust for the following uses and purposes . . .

"Upon the death of my said mother or my said sister said trust and the powers and duties of my said trustees shall *ipso facto* cease and determine, and in the event that my said mother die before my said sister, an undivided two-thirds of all of my said property shall go to my said sister, free and clear of any trust and for her own and absolute use forever, and the remaining undivided one-third of my said property shall go as follows, to wit:

Protestant Orphan Asylum, Pacific Hebrew Orphan Asylum, Roman Catholic Orphan Asylum and San Francisco Society for Protection of Children (corporations, societies or institutions located in the City and County of San Francisco, State of California), to be divided equally among said charitable institutions share and share alike, all of my said property being subject, however, to the payment therefrom of the funeral expenses and the expenses of the last illness of my said mother, and in the event that my said sister die before my said mother, an undivided two-thirds of all of my said property shall go to my said mother, free and clear of any trust and for her own and absolute use forever, and the remaining undivided one-third of my said property shall go as follows, to wit: To the Protestant Orphan Asylum, Pacific Hebrew Orphan Asylum, Roman Catholic Orphan Asylum, and San Francisco Society for Protection of Children (corporations, societies or institutions located in the City and County of San Francisco, State of California), to be divided equally among said charitable institutions, share and share alike.''

The decree then provided:

''That upon the death of said Nancy C. Scrimger, the said mother of said deceased, before the death of Kate McGavin, the said sister of said deceased, the said Kate McGavin, sister of said deceased will be entitled to an undivided two-thirds of all of said trust property, free and clear of any trust, and for her own and absolute use thereafter; and at the same time the charitable institutions mentioned in said Will, and as hereinbefore set forth, Protestant Orphan Asylum, Pacific Hebrew Orphan Asylum, Roman Catholic Orphan Asylum, and San Francisco Society for Protection of Children, will be entitled to the remaining undivided one-third of the said property and trust fund, free and clear of any trust, in equal shares, share and share alike;

''That in the event Kate McGavin, the said sister of said Charles Louis Scrimger, deceased, die before the said mother of said deceased, Nancy C. Scrimger, the said mother of said deceased, will then be entitled to an undivided two-thirds (⅔) of all of the said property of said deceased, free and clear of any trust, and for her own and absolute use forever, and at the same time the charitable institutions

named in said will namely, Protestant Orphan Asylum, Pacific Hebrew Orphan Asylum, Roman Catholic Orphan Asylum, and San Francisco Society for Protection of Children, will then be entitled to the remaining undivided one-third (⅓) of the property of said deceased, in equal shares, share and share alike.''

The mother of the deceased died November 19, 1912, and the trust then terminated. The decree settling the account of the trustees awarded the portions of the trust property held in trust for the Roman Catholic Orphan Asylum and for the San Francisco Society for Protection of Children to the sister, Kate McGavin. The appellants contend that this portion of the decree, so far as it relates to the Roman Catholic Orphan Asylum, is erroneous, but no complaint is made with reference to that portion of the decree by which the property held in trust for the San Francisco Society for Protection of Children, under the decree of distribution, is now ''distributed'' to the sister of the deceased. Appellants also complain that the trustees have delayed distribution for more than seven years after the trust terminated and that certain charges of expenses awarded the trustees for that reason should not have been allowed and that other expenses should have been paid from the income instead of from the principal of the trust. The basis upon which the court awarded that portion of the trust property the deceased left for the benefit of the Roman Catholic Orphan Asylum to the sister of the deceased instead of to the asylum is shown in the following finding of the trial court:

''The court further finds that the Roman Catholic Orphan Asylum named in the will of said deceased, and the Roman Catholic Orphan Asylum named in the decree of distribution, was a corporation incorporated under the laws of the State of California on the 12th day of August, 1858, and whose charter expired by limitation on the 12th day of August, 1908, prior to the date of the will of said decedent; that from on or about the 12th day of August, 1858, until the 12th day of August, 1908, on which said date it ceased to exist as a corporation as aforesaid, but not thereafter, said Roman Catholic Orphan Asylum was organized, existing and transacting its business and conducting a charitable institution for the care of orphans in the City

and County of San Francisco; that on the 24th day of March, 1910, there was incorporated under the laws of the State of California a corporation by the name of Roman Catholic Orphan Asylum of San Francisco, which said corporation is the corporation which has appeared in this proceeding and filed objections to the above mentioned account; that said Roman Catholic Orphan Asylum of San Francisco thereupon commenced to transact business in the City and County of San Francisco and to carry on and conduct the asylum for the care of orphans that had been previously conducted by said Roman Catholic Orphan Asylum that had forfeited its charter on the 12th day of August, 1908, as aforesaid; that said orphan asylum was conducted continuously and that the people who had controlled the corporation that forfeited its charter on the 12th day of August, 1908, as aforesaid, continued to operate said asylum until the 24th day of March, 1910, at which date said same persons incorporated said Roman Catholic Orphan Asylum of San Francisco which said last named corporation has continued to operate said asylum as aforesaid; that the said Roman Catholic Orphan Asylum named in said will was the same Roman Catholic Orphan Asylum as was named in said decree of distribution and that said Roman Catholic Orphan Asylum named in said will and in said decree of distribution has at no time since the 12th day of August, 1908, existed either as a corporation, or society, or institution, or otherwise; that said Roman Catholic Orphan Asylum of San Francisco incorporated March 24th, 1910, as aforesaid, and which is the only Roman Catholic Orphan Asylum that has appeared in any proceeding in connection with the said estate, or the said trust, was not named in said will or in said decree of distribution, and has no right, title, or interest in or to any portion of the said trust estate, either by reason of said will of said deceased, or said decree of distribution, or otherwise.''

[1] The deceased died March 6, 1909. The decree of distribution was rendered January 5, 1911, and entered March 22, 1911. At that time the Roman Catholic Orphan Asylum in San Francisco was being operated by the Roman Catholic Orphan Asylum of San Francisco, a corporation. The decree should be construed as a distribution in trust for the new corporation then in existence, for it is clear that

the real beneficiaries of the trust are the children in the institution and the appropriate custodian of the trust fund, upon the death of the mother of decedent, the corporation operating the institution. (See discussion in *Estate of Winchester,* 133 Cal. 271 [54 L. R. A. 281, 65 Pac. 475]; *Estate of Upham,* 127 Cal. 90 [59 Pac. 315].)

The decree of distribution to the trustees declared that they were to hold the same upon a trust which terminated upon the death of the mother, whereupon one-third of the property should "belong to and vest in the following corporations, societies, or institutions located in the City and County of San Francisco, State of California, namely, Protestant Orphan Asylum, Pacific Hebrew Orphan Asylum, Roman Catholic Orphan Asylum, and San Francisco Society for Protection of Children, to be divided equally among such charitable institutions, share and share alike." Thus, by the terms of the decree the trustees were to turn over to a corporation, society, or institution known as the Roman Catholic Orphan Asylum, one-twelfth of the property in their hands. There was at the time of the decree of distribution in the city and county of San Francisco no other institution of that or similar name. It was, therefore, appropriate that the order settling the final account of the trustees should have directed the transfer from the trustees, Fitzsimmons and Barry, to the corporation in charge of the orphan asylum of that portion of the trust funds devoted to the Roman Catholic Orphan Asylum.

[2] In this connection it should be borne in mind that the decree of distribution is a conclusive determination of the meaning and effect of the will and that the will itself cannot be looked to for the purpose of interpreting the decree except in so far as it is referred to and made a part thereof. The rule in that regard is thus stated in *Wills* v. *Wills,* 166 Cal. 529, 531 [137 Pac. 249, 251]: "These decrees stand unassailed, and they are conclusive determinations against the existence of any trust in favor of plaintiff under the will of his father (*William Hill Co.* v. *Lawler,* 116 Cal. 359 [48 Pac. 323]; *Goad* v. *Montgomery,* 119 Cal. 552 [63 Am. St. Rep. 145, 51 Pac. 681]; *Estate of Trescony,* 119 Cal. 568 [57 Pac. 951]; *Williams* v. *Marx,* 124 Cal. 22 [56 Pac. 603]; *More* v. *More,* 133 Cal. 494 [65 Pac. 1044, 66 Pac. 76]; *Martinovich* v. *Marsicano,* 137 Cal.

354 [70 Pac. 459]; *Keating* v. *Smith,* 154 Cal. 186 [97 Pac. 300].) It will not do to argue, as is here done, that because the property must have been distributed to the widow in any and in all events, resort may be had to the will, from which it will be discovered that it was distributed to her as trustee under a trust. Only where by apt language the will is incorporated into the decree, as in *Goldtree* v. *Thompson,* 79 Cal. 613 [22 Pac. 50], may this be done. (*Goad* v. *Montgomery,* 119 Cal. 552 [63 Am. St. Rep. 145, 51 Pac. 681].) In all other cases the decree speaks for itself alone, without the aid of the evidence upon which it was based, and the will itself is only such evidence. 'The decree supersedes the will and prevails over any provision therein which may be thought inconsistent with the decree.' (*Goad* v. *Montgomery,* 119 Cal. 552 [63 Am. St. Rep. 145, 51 Pac. 681].) 'Where a trust has been created by will the validity of the trust is necessarily involved in the question of distribution, for if invalid the bequest fails. (*Estate of Walkerly,* 108 Cal. 660 [49 Am. St. Rep. 971, 41 Pac. 772].) Hence, as necessary to distribution, it is within the province of the probate court to define the rights of all who have legally or equitably any interest in the property. of the estate derived from the will.' (*More* v. *More,* 133 Cal. 494 [65 Pac. 1044, 66 Pac. 76].) 'The decree was necessarily a judicial construction of the will and of the several interests of the distributees, and cannot be assailed collaterally. There is no doubt or uncertainty in the decree itself as to plaintiff's title, and to that alone we are permitted to look.' (*Williams* v. *Marx,* 124 Cal. 22 [56 Pac. 603].)''

So far as the Roman Catholic Orphan Asylum is concerned, the matter resolves itself into this simple proposition: The trustees hold certain properties in trust for the Roman Catholic Orphan Asylum, indifferently described in the decree of distribution as a corporation, society, or institution. This is a charitable institution, described as such in the decree, which refers to the beneficiaries as "such charitable institutions." It is a matter of entire indifference whether the corporation in charge of the Roman Catholic Orphan Asylum is the identical corporation in charge at the time of making the will or the death of the deceased. There is no uncertainty as to the ultimate ben-

eficiary of the trust. The question of whether or not there is or was a corporation entitled to take is wholly immaterial where the decedent left the property to trustees who took the title thereto and were charged in law with the duty of administering the trust.

[3] Two other considerations leading to the same conclusion may be referred to. Courts of equity look behind the corporate form to the persons behind that form where necessary for the purpose of doing justice. In a recent case we said:

"But it is well established in this state that under circumstances such as these where a corporation reorganizes under a new name but with practically the same stockholders and directors and continues to carry on the same business, a court of equity will regard the new corporation as a continuation of the former corporation, and will hold it liable for the debts of the former corporation. (*Blanc* v. *Paymaster Mining Co.*, 95 Cal. 524 [29 Am. St. Rep. 149, 30 Pac. 765]; *Higgins* v. *California Petroleum Co.*, 122 Cal. 373 [55 Pac. 155]; 147 Cal. 363 [81 Pac. 1070]; *Strahm* v. *Fraser*, 32 Cal. App. 447 [163 Pac. 680].)" (*Stanford Hotel Co.* v. *M. Schwind Co.*, 180 Cal. 348, 354 [181 Pac. 780, 783].) It would seem to follow inevitably in this case that we should be able to see the same orphan asylum, with its officers and orphans behind the new corporate name, which is but a convenience for the conduct of the institution. (See *Estate of Winchester,* 133 Cal. 271 [54 L. R. A. 281, 65 Pac. 475], and *Estate of Upham,* 127 Cal. 90 [59 Pac. 315].) The new corporation was, in effect, a revival and reorganization of the defunct corporation by the former managers, and for the beneficiaries of the old corporation.

[4] The other rule leading to the same conclusion is the equitable doctrine of *cy pres* applied to charities. Here the respondents have the legal title to the estate under the decree and in trust for the "Roman Catholic Orphan Asylum." The doctrine of *cy pres* points to the Roman Catholic Orphan Asylum of San Francisco as the proper object of such trust. The rule is thus stated in *Estate of Hinckley,* 58 Cal. 457, 504: " . . . Our conclusion upon this branch of the case, is, that Courts of Equity in this State have jurisdiction, derived from the English common

law, independent of the statute of Elizabeth, to establish and enforce charities, when trustees competent to take the legal estate are named, and the class to be benefited, and the individuals to be designated by the trustees, are capable of ascertainment. . . . ''

There is in any event no basis whatever for the order directing the trustees to turn the property over to Kate McGavin. We are not dealing with a legacy lapsed for uncertainty which the heir at law may take, but with an estate vested in the trustees, and the only question is whether the beneficiaries can be ascertained by the probate court or a court of equity. If not, the title remains in the trustees.

[5] A large portion of the appellants' opening brief is devoted to a discussion of certain general objections to the settlement of the account of the trustees. These objections are taken in general terms and the specific items of the account objected to in the main are not pointed out. It is objected that the trustees violated the terms of the trust in that they paid certain expenses out of the *corpus* of the estate instead of out of the income before the death of the mother. These matters were settled in the first account of the trustees and cannot now be questioned. It is claimed that the trustees had no right to use the trust property to pay assessments upon stock in certain corporations which had been distributed to them as a part of the trust estate. In response to this very general objection the respondents call attention to the fact that most of these payments were made with the knowledge and consent of all the beneficiaries of the trust, including the appellants. The stock in one of the corporations finally became worthless by reason of the foreclosure of a mortgage upon the property of the corporation.

The appellants also object to the allowance made to the trustees for expenses and for fees during the administration of the trust estate from the time of the death of the mother until the date of the account. The objection is that the trustees should have turned the property over upon the termination of the trust in 1912 and that the continued possession of the trust estate by the trustees was wrongful, and that they should not only be deprived of the compensation but should pay interest upon the trust as a penalty for

such wrong holding. It is particularly pointed out that the trustees have favored the sister, Kate McGavin, in the litigation which she has instituted to secure for herself the entire trust estate. In view of the fact that the appellants neither printed the evidence in their brief, the appeal being based upon a typewritten transcript, nor have pointed out in detail the items of the account to which they object, we would be justified in declining to consider these propositions. It appears, however, that the reason for the delay in the distribution of this estate has been that the respondent, Kate McGavin, upon the death of her mother, claimed that the original decree of distribution was procured by mistake, by reason of the fact that the will having been made within thirty days of the death of the deceased, Charles Louis Scrimger, was void as to charitable bequests under the provisions of section 1313 of the Civil Code, and this was overlooked in preparing the decree. She instituted an action to have the decree vacated and was successful in the lower court, but the judgment was reversed upon appeal (*McGavin* v. *San Francisco P. O. A. Soc.*, 34 Cal. App. 168 [167 Pac. 182].) Upon the return of the *remittitur* to the lower court the respondent herein requested the trial court to adjudicate the rights of the beneficiaries of the trust in that equitable action, but the court refused to do so and dismissed the case, leaving the matter to be determined upon the settlement of the final account of the trustees. The trustees thereafter rendered an account and requested that the trust estate be distributed. The respondent, Kate McGavin, then contended and still contends that she is entitled to the entire estate. The trial court found that the trustees at all times acted in good faith; that the appellants were estopped to object to the payment of assessments upon the corporate stock held by them as trustees, so that the general claim of appellants with reference to the account narrows itself down to this proposition, namely, that trustees as a matter of law are not entitled to any expenses paid after the termination of the trust, even though they may hold the property for a long period awaiting proper settlement of the final accounts and the decree of distribution by the probate court. It is sufficient to say that this position cannot be maintained. [6] It was the duty of trustees to care for the trust estate, even after the trust

terminated, where there was a dispute as to the rights of the beneficiaries, until the matter was settled by the court having jurisdiction over the settlement of their final account. We see no reason for overturning the conclusion of the trial court that the trustees were entitled to the allowance as made to them. The appellants in their reply brief have offered to print such portions of the record as we may consider necessary to the proper determination of the appeal. After an examination of the typewritten record as well as the brief, we feel satisfied that the order settling the account should be affirmed and that no substantial benefit would be derived by the appellants by a further printing of the record and, no doubt, that was the opinion of the appellants when they printed their brief.

[7] The respondents claim that in view of the fact that under the law the provisions of the will of the deceased in favor of the appellants were void because the will was executed within thirty days of the death of decedent, and because it is stated by the appellants in their brief that the deceased did, in fact, die within thirty days from the date of the will, that these admitted facts render the decree invalid and that the judgment should be affirmed, for the reason that the effect of such admission is the same as though the decree of distribution itself had recited the fact of the death of the testator within thirty days after the will was executed. This point is not well taken. The court had jurisdiction to make an erroneous decree of distribution and even though the facts showing such error appeared upon the face of the decree, it would not be void as to such provisions. The remedy would be by appeal. [8] Moreover, the mere fact that the decree of distribution was made in accordance with the terms of the will, notwithstanding the fact that the will was invalid as to the charitable bequests, would not necessarily show that the decree was erroneous. It might have been consented to by the persons who would otherwise be entitled to receive the trust estate and for that reason be valid.

The trial court is directed to enter a decree reducing the award to Kate McGavin from five-sixths to three-fourths of the estate, and to award one-twelfth to the Roman Catholic Orphan Asylum of San Francisco; one-twelfth to the Pa-

cific Hebrew Orphan Asylum; one-twelfth to the Protestant Orphan Asylum.

Lennon, J., Lawlor, J., Waste, J., Shurtleff, J., Sloane, J., and Shaw, C. J., concurred.