[Civ. No. 12841. First Dist., Div. Two. Oct. 30, 1945.]

Estate of HENRY F. LINGG et al., Deceased. HAZEL EGGERT et al., Appellants, v. AMERICAN TRUST COMPANY (a Corporation) et al., Respondents.

404

George D. Collins, Jr., for Appellants.

Brobeck, Phleger & Harrison for Respondents.

GOODELL, J.—This appeal was taken from an order denying the appellants' motion to amend and correct the decree of final distribution in this estate. The motion was made over two years after distribution, and at the time (shortly after the death of the testator's widow) when the respondent trustee was about to deliver to the respondent orphan asylum, that part of the residue of the estate distributed to it by the decree. The share thus going to charity consisted of securities, the value of which may be conceded to be in excess of the statutory limit of one-third of the estate (Prob. Code, § 41). The appellants' motion was designed to prevent the respondent orphan asylum from receiving more than such one-third, and to obtain all in excess

thereof for themselves as heirs, legatees and devisees of the testator's widow.

The testator died on December 7, 1940, leaving as his next of kin his wife, Matilda Lingg, three brothers and a sister. The widow was executrix of the will. Her account shows that the appraised value of the estate accounted for by her was $43,851.85, of which approximately 70 per cent was in stocks and bonds.

The widow was not very liberally provided for by the will. She was bequeathed $1,000 in cash, also personal effects, jewelry, an automobile, and the household furnishings; she was devised a life estate in real property on Capistrano Avenue, Berkeley (which property apparently already stood in her name) with the remainder to the appellant Hazel Eggert, her daughter by a former marriage; she was also devised a life estate in real property on Grant Street, Berkeley, with the remainder to the respondent orphan asylum; she was bequeathed the income for her life from the residue (after the payment of several money legacies), which residue formed the corpus of a testamentary trust. This residue consisted of securities, and the will provided that upon the widow's death the trust should terminate and the trustee should pay certain legacies out of the corpus and pay "the remainder and/or residue of said Trust Fund to the Catholic Orphanage of San Francisco Diocese."

The inheritance tax appraiser determined that the net estate amounted to $38,329.59; that $28,665.70 thereof was community property and $9,663.89 thereof separate property.

It is evident that the widow was not content to take only under the will, for the decree of distribution found that she "has elected to take and receive her community share of the estate," and that "pursuant to agreement between said Matilda Lingg, and the interested residuary devisees, legatees and beneficiaries under the will of said deceased, that the community share of said Matilda Lingg consists of that portion of the estate of said deceased hereinafter distributed to said Matilda Lingg which is designated as her community share."

The stocks and bonds were valued, according to the account, at about $30,500 ($30,745.83 to be exact). Had the decree of distribution followed the terms of the will all these securities would have gone into the residue, but under the

settlement which came about because of the widow's assertion of her community right, there was a division of these securities. As a consequence there were distributed to her, outright, securities of the value of approximately $13,500 or about 45 per cent of the whole, which left securities of the value of approximately $17,000, or about 55 per cent of the whole, to fall into the residue. In short, instead of approximately $30,500 in stocks and bonds forming the residue, the major part of which eventually would go to the respondent orphan asylum, only a little over half thereof did so. Under the decree of distribution, notwithstanding this division, the widow still received the income for life from approximately $17,000 of securities which went into the residue.

The appellants contend that the provisions of the decree of distribution which obviously distributed more than one-third of the estate to charity, could not be conclusive because it was impossible to determine at the time of distribution, or until the termination of the trust on the death of the widow whether the devise and bequests to charity exceeded one-third of the estate, and, if so, the amount of such excess. In this connection they claim that under section 1120 of the Probate Code the court retained jurisdiction because a trust continuing after distribution was involved (citing *Estate of Evans,* 62 Cal.App.2d 249 [144 P.2d 625]). Appellants rely on *Estate of Campbell,* 175 Cal. 345 [165 P. 931], and *Estate of Burns,* 26 Cal.App.2d 741 [80 P.2d 77]. Before discussing those cases, however, we would advert to the important fact that a settlement was agreed on before distribution, to which agreement the widow and ''the interested residuary devisees, legatees and beneficiaries'' were parties. Included in such group was the respondent orphan asylum, the largest devisee and legatee, and presumably included also were these appellants, for their legacies (in no way involved in the present controversy) were to come out of the residue before the orphan asylum was to receive the rest of it. This agreement was made notwithstanding the widow could have insisted on her community right without asking leave of the other beneficiaries (Prob. Code, § 201). ''The heirs or devisees may consent to a distribution in a particular manner, and the court may incorporate their contract in its decree, either by express terms or by apt reference. . . . The consenting parties cannot complain

on appeal that the decree departs from the terms of the will.'' (11B Cal.Jur. p. 767). The decree herein departed from the will in that it gave the widow some $13,500 in securities which the testator had not left her, and thereby reduced the bequest to charity by exactly that much. That, the only departure, was by the widow's own election. The testator left no issue. His only next of kin were his wife, three brothers and a sister. The brothers and sister were not mentioned in the will, did not appear in the proceedings or object to the distribution, and they are not parties to this appeal. Hence the widow would seem to be the only person who could have objected to the charitable bequest in excess of the one-third limitation, or benefited by a reduction of such bequest. (See *Estate of Cottrill,* 65 Cal.App.2d 222 [150 P.2d 214]; see also *Estate of Dwyer,* 159 Cal. 680, 687 [115 P. 242], which explains the theory and purpose of the legislation relating to charitable bequests.) She was the executrix of the will, and of course knew from the very outset that it made exceedingly generous provision for charity. She saw fit to assert her community right, with the results already noted. The fact that she did not demand more would indicate that she was disinclined to cut further into the bequest which her husband had intended for charity.

If, as the appellants now contend, the court could not have determined the excess, if any, until after the widow's death, Mrs. Lingg could have asked for such form of distribution as would have reserved that question until the excess, if any, could be ascertained. (See *Estate of Campbell, supra,* p. 352 where such procedure is suggested.) Instead of doing so she consented to the very distribution to the respondent orphan asylum which the decree, now under attack by her heirs, granted.

It would seem, then, that Matilda Lingg, having consented to the decree, could not have later objected to it, or appealed from it. (*Estate of Lorenz,* 124 Cal. 495 [57 P. 381]; *Hibernia etc. Soc.* v. *Waymire,* 152 Cal. 286, 287 [92 P. 645]; *People* v. *Hodges,* 205 Cal. 476, 477 [271 P. 897]; *Estate of Hunt,* 102 Cal.App. 650, 654 [283 P. 366]; *Kentera* v. *Kentera,* 66 Cal.App.2d 373, 375 [152 P.2d 238].) Nobody else appealed. If she could not have successfuly made this motion, then certainly these appellants, who avowedly claim through and under her as *her* heirs, legatees and devisees, could not do so. They were stepchildren of the testator

and not within the class of persons who would benefit if the charitable bequest were to be cut down to the statutory one-third. (See Cottrill and Dwyer cases, *supra*.)

*Estate of Campbell, supra,* was a case where the court on *partial* distribution attempted to decide then and there that the will violated the one-third limitation, although the will was full of contingencies. The decree of partial distribution was reversed, the court holding that whether the one-third limitation was exceeded or not could not possibly be determined at that time because all the persons upon whose deaths the charitable bequests would become effective were still alive. The opinion says that "the only way in which the rights of all parties can be fully protected is at this time to distribute all the property to the trustee for the purposes of the trust, *reserving the matter of further distribution until the termination of the trust,* at least in so far as the charitable bequest is concerned." (Emphasis ours). *Estate of Burns, supra,* was an appeal from a judgment of nonsuit in a will contest grounded on claimed undue influence. The court simply held that whether or not the one-third limitation was exceeded could not then be decided. The court eliminated that question by saying that it was conceded "that the sole question involved on this appeal is whether the evidence produced by them [appellants] established a *prima facie* case of undue influence." Manifestly such an appeal was not the time or place for the determination of such a question as the validity of a charitable trust contained in a will.

In addition to what has been said, we are satisfied that the rule found in the cases cited by the respondent orphan asylum is determinative of this controversy. That rule is stated in 11B Cal.Jur. p. 796, section 1296. It has been applied in a number of cases, among which are *Goldtree* v. *Allison,* 119 Cal. 344 [51 P. 561]; *In re Trescony,* 119 Cal. 568 [51 P. 951]; *Keating* v. *Smith,* 154 Cal. 186 [97 P. 300]; *Estate of Scrimger,* 188 Cal. 158 [206 P. 65]; *Cook* v. *Cook,* 17 Cal.2d 639, 652 [111 P.2d 322] and *Estate of Gardiner,* 45 Cal.App.2d 559, 564 [114 P.2d 643]; In *Keating* v. *Smith* at p. 191 the rule is clearly stated as follows:

"The will attempted to create a trust which, considered by itself, was no doubt invalid under the rule declared in *Estate of Fair,* 132 Cal. 523 [84 Am.St.Rep. 70, 60 P.

442, 64 P. 1000]. The validity of the trust is, however, no longer open to question. The decree of the superior court distributing the residue of the estate to trustees upon certain trusts is a conclusive adjudication of the validity of the disposition made by the testator. (*Crew* v. *Pratt*, 119 Cal. 139 [51 P. 38]; *Goldtree* v. *Allison*, 119 Cal. 344 [51 P. 561].)

"And it is equally conclusive as an ascertainment and adjudication of the terms of the trust, and of the rights of all parties claiming any legal or equitable interest under the will. (*Goad* v. *Montgomery*, 119 Cal. 552 [63 Am.St. Rep. 145, 51 P. 681]; *Williams* v. *Marx*, 124 Cal. 22 [56 P. 603]; *More* v. *More*, 133 Cal. 489 [65 P. 1044].) The decree supersedes the will and prevails 'over any provision therein which may be thought inconsistent with the decree.' (*Goad* v. *Montgomery*, 119 Cal. 552 [63 Am.St.Rep. 145, 51 P. 681].) In determining the rights of the widow, we are, therefore, to look, not to the terms of the will, but to those of the decree of distribution."

The Scrimger case, *supra*, contains several points of similarity to this case. In the first place that was an appeal from an order settling the account of a trustee made about ten years after the decree of distribution had become final. Here the appeal was taken from an order denying the appellants' motion, made at the time when the trustee's account, rendered a year and a half after the decree of distribution had become final, was before the court for settlement. In both cases the attack was based upon a claimed violation of the section dealing with charitable devises and bequests. In the Scrimger case the will had been made less than 30 days before the testator's death but, despite that, the decree had followed the will and distributed one-third to charity. In an attack made by a suit in equity (*McGavin* v. *San Francisco Protestant Orphan Asylum*, 34 Cal.App. 168 [167 P. 182]), some time after the decree of distribution had become final a legatee sought for the first time to raise the point that the will had been made within 30 days before death. The trial court gave judgment setting aside the decree of distribution on the ground that in so far as it purported to distribute one-third to charity it was void. The basis of the judgment was the mistake of the attorney handling the estate in overlooking the 30-day point, just as the appellants' motion herein was made on the

ground that the court had by *oversight* distributed more than one-third to charity. The judgment was reversed. About 10 years after the decree of distribution, when the trustees filed their account, another attack was made, based, *inter alia,* upon the 30-day point theretofore litigated in the McGavin case. The court declined to upset the decree of distribution, holding (188 Cal. at 169) that "The court had jurisdiction to make an erroneous decree of distribution and even though the facts showing such error appeared upon the face of the decree, it would not be void as to such provisions. The remedy would be by appeal." The court in the same opinion (188 Cal. at 164, 165) had stated at some length the rule found at 11B Cal.Jur. p. 796, *supra,* and likewise stated in *Keating* v. *Smith, supra.* In the Scrimger case, the court refused to concede that the decree of distribution was erroneous, saying (188 Cal. 169), "Moreover, the mere fact that the decree of distribution was made in accordance with the terms of the will, notwithstanding the fact that the will was invalid as to the charitable bequests, would not necessarily show that the decree was erroneous. It might have been consented to by the persons who would otherwise be entitled to receive the trust estate and for that reason be valid." In the same connection it is interesting to note that in the McGavin case (34 Cal.App. at 173) the court said: "In conclusion, it may be said that in the absence of the explanation given by the plaintiff the conduct of the parties is inexplicable except upon the theory that the mother and sister of the deceased had originally concluded that the orphanages designated in the invalid provision of the will should receive the benefit of the bounty of their relative regardless of its vulnerability to attack; and that the present suit, instituted after the death of the mother, is the result of an afterthought and a changed attitude on the part of the plaintiff." In the case at bar, in discussing the consent feature of the decree here under attack we have pointed out that Matilda Lingg might well have intended that all over and above what she then claimed, *and received by the decree,* should go to charity, as her husband had intended it (and more) should go. The observations in both cited cases are particularly pertinent to this case and (as in the Scrimger case) it is not necessary to hold that the decree herein was erroneous.

The appellants' reliance upon the Campbell case is be-

cause (they argue) it was not until Matilda Lingg died and the corpus was *ipso facto* released and ready for delivery to charity that the amount of the excess could be determined, hence that at the time of distribution she was in no position to raise the question and never had her day in court on this issue. We believe this contention has already been answered herein.

When the court found that none of the provisions of the decree of distribution was the result of mistake or inadvertence on the part of the court, Matilda Lingg or any other person, but that the decree "is a valid and binding determination of the rights of all persons in and to all of the property of the decedent," it had before it, of course, the record from which clearly appeared all the facts respecting the widow's assertion of her community right; the agreement reached before distribution; the appraised value of the community and separate property and the appraised value of all the securities bequeathed to charity. The court knew, moreover, that the widow was executrix, and that, as such, she had signed the petition for distribution. With all these facts before it, the court could not have concluded otherwise than it did.

There is another and separate reason why the court's ruling was right. It is settled law that "judicial error which occurs in the rendition of orders or judgments which are the fault of an exercise of judicial discretion may not be corrected except by statutory procedure" (*Phillips* v. *Trusheim*, 25 Cal.2d 913, 916 [156 P.2d 25], citing *Stevens* v. *Superior Court*, 7 Cal.2d 110 [59 P.2d 988]). The appellants' motion was made on the ground of judicial inadvertence or mistake in that the court overlooked the one-third limitation contained in section 41 Probate Code when it entered the decree of distribution. This was no clerical error. If there was an oversight it was a judicial error and not subject to correction by a motion such as that made herein.

The order is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 20, 1945. Carter, J., voted for a hearing.