[Civ. No. 8391.   Fourth Dist., Div. Two.   Apr. 28, 1967.]

Estate of LEON C. HIGH, Deceased. RAYMOND O. HIGH, Petitioner and Respondent, v. BROWN UNIVERSITY, Objector and Appellant.

Winthrop O. Gordon for Objector and Appellant.

John T. Tomlinson, Jr., for Petitioner and Respondent.

KERRIGAN, J.—Leon C. High, also known as Leon High, executed his last will and testament on May 16, 1964, which instrument provided, *inter alia,* for the establishment of a testamentary trust, the salient provisions of which may be summarized in the following manner: the residue of the testator's estate, after payment of all debts, costs of administration, fees, inheritance taxes, and certain specific bequests, was to be distributed to the United California Bank, as trustee; the will indicated that the testator had designated his adopted son as a direct beneficiary of a $10,000 life insurance policy, the proceeds of which were to be payable to the son in installments of $100 monthly; net income from the trust estate would be accumulated by the trustee and added to the corpus of said trust and, at such time as the monthly payments from the insurance policy payable to the son terminated (some eight and one-half years following the testator-insured's demise), the trustee was directed to pay the entire net income from the trust to the son for life; upon the son's death, the income would be payable to the son's wife for her lifetime or until her remarriage; upon her remarriage or demise, the net income was to be paid to the testator's grandson during his lifetime; and upon his death, the remainder of the trust estate

would be payable to the testator's *alma mater,* Brown University, free and discharged of the trust. No provision was contained in the will empowering the trustee to invade the corpus of the trust for the benefit of any of the three designated beneficiaries.

On November 21, 1964, a few months after execution of his will, Leon C. High died as a result of fatal injuries sustained in an accident, and left surviving him an adopted son, Raymond, born August 23, 1931, daughter-in-law, Barbara, born July 1, 1939, and grandson, Clifford, born October 25, 1963.

The estate was appraised originally in the sum of $45,391.53, but later a corrected inventory was filed increasing the fair market value of certain real property in the sum of $1,500, comprising a total estate of $46,891.53. Administrative costs, inheritance taxes, and valid claims approximate $4,700. Consequently, decedent's net estate represents a figure of $42,000.

Subsequent to the admission of the will to probate and the appointment of United California Bank as executor of the estate, Raymond O. High, petitioner and respondent herein, filed a petition for determination of entitlement to distribution of estate pursuant to the provisions of section 1080 of the Probate Code. In the petition, the son asserted that the devise and bequest for charitable uses to Brown University exceeded the limitations contained in section 41 of the Probate Code, and urged that a reduction in the Brown University bequest be effected so as to limit the charitable devise to one-third of the estate and the balance of the net estate be distributed to him. Brown University countered by filing its statement of interest. A hearing was held on the petition and statement, but extrinsic evidence was not actually introduced. However, points of law were orally argued and certain acturial tables were attached to counsel's memoranda of points and authorities. Upon submission of the cause, the court entered its findings and decree whereby it was adjudged that the son was entitled to two-thirds of the net estate upon distribution, and that the trustee was entitled to the remaining one-third of the net estate upon distribution, to hold the same in trust in accordance with the provisions of the decedent's will.

Brown University urges on appeal that the trial court erred in the following respects: (1) The son failed to sustain his burden of proving that the devise to the charity exceeded the limitations prescribed in section 41 of the Probate Code; (2)

the award of two-thirds of the net estate to the son was erroneous in that it divested the trust, the beneficiaries thereof, and the charitable claimant of their respective property rights; and (3) where any uncertainty exists as to the value of a charitable devise which is subject to successive life estates, the trial court should defer the determination of such issue until the termination of the trust.

Section 41 of the Probate Code provides, in material part, as follows: ''No estate, real or personal, may be bequeathed or devised to any charitable or benevolent society or corporation, or to any person or persons in trust for charitable uses, by a testator who leaves a spouse, brother, sister, nephew, niece, descendant or ancestor surviving him, who, under the will, or by the laws of succession, would otherwise have taken the property so bequeathed or devised, unless the will was duly executed at least 30 days before the death of the testator. If so executed at least 30 days before death, such devises and legacies shall be valid, but they may not collectively exceed one-third of the testator's estate as against his spouse, brother, sister, nephew, niece, descendant or ancestor, who would otherwise, as aforesaid, have taken the excess over one-third, and if they do, a pro rata deduction from such devises and legacies shall be made so as to reduce the aggregate thereof to one-third of the estate. All property bequeathed or devised contrary to the provisions of this section shall go to the spouse, brother, sister, nephew, niece, descendant or ancestor of the testator, if and to the extent that they would have taken said property as aforesaid but for such devises or legacies; otherwise the testator's estate shall go in accordance with his will and such devises and legacies shall be unaffected.''

It is the policy of the law, as defined in section 41 of the Probate Code to preclude a testator from leaving more than one-third of his estate to non-exempt charities to the detriment of a surviving spouse, brother, sister, nephew, niece, descendant or ancestor who otherwise would have taken under the will or the laws of succession of the State of California. (*Estate of Hughes,* 202 Cal.App.2d 12, 16 [20 Cal.Rptr. 475]; *Estate of Nicely,* 235 Cal.App.2d 174, 184 [44 Cal.Rptr. 804]; *Estate of Thomason,* 245 Cal.App.2d 793, 801 [54 Cal.Rptr. 229].) This statutory restriction was designed to protect those heirs of the testator defined therein who are the natural objects of the testator's bounty. (*Estate of Lennon,* 152 Cal. 327, 329 [92 P. 870, 125 Am.St.Rep. 58, 14 Ann. Cas. 1024];

*Estate of Dwyer,* 159 Cal. 680, 687 [115 P. 242]; *Estate of Adams,* 164 Cal.App.2d 698, 702 [331 P.2d 149].) ██ However, a charitable bequest must be excessive under the statute to support adjudication of invalidity and consequent succession by another; thus, under section 41 of the Probate Code, it must clearly appear that the charitable gift exceeds one-third of the net distributable estate. (See *Estate of Campbell,* 175 Cal. 345, 352 [165 P. 931].)

Under the trial court's decree the son would receive two-thirds of the net estate free and clear of the trust, and the remaining one-third of the net estate would be distributed to the trustee in accordance with the provisions of the will.

In *Estate of Campbell, supra,* 175 Cal. 345, the testatrix created a testamentary trust which was to continue until the death of her son, and upon the son's demise, the trust would terminate. The trustee was authorized to pay the net income of the trust to the son, after deducting therefrom a small monthly allowance which was payable to the testatrix's housekeeper. In the event the housekeeper died before the son, the monthly stipulation in favor of the housekeeper was likewise to be payable to the son. *The trustee was also authorized to invade corpus for the son's support.* The will further provided that upon termination of the trust, if the son left surviving issue, all of the estate property should immediately vest in such issue, provided the housekeeper was not then alive, and in the event the housekeeper did survive the son, then $1,000 should vest in the domestic and the remainder in the son's issue; in the event the son died without issue but left a surviving wife, then $1,000 was to vest in the housekeeper and one-fourth of the remainder in the surviving wife, and the remaining three-fourths of the estate was to be distributed free of the trust to Los Angeles Infirmary, a charitable corporation. In the event the son died without leaving issue or wife surviving, one-fourth of the estate was to vest in the housekeeper and three-fourths of the remainder in the charitable organization; provided, if the housekeeper did not survive the son, her share likewise would vest in the hospital. The trial court held that the will was invalid as to two-thirds of the property as being in violation of the California *mortmain* statute then in effect, and awarded the son two-thirds of the estate with the remaining one-third of the estate being distributed to the trustee in accordance with the trust provisions of the will, *which was the effect of the trial court's action in the case under review.* However, on appeal, the California

Supreme Court held that the trial court decree was erroneous inasmuch as it destroyed the paramount trust to the extent of two-thirds of the property of the deceased, and cut out the valid bequest to the surviving wife and the potential issue of the marriage. The high tribunal further ruled that even if such charitable bequest was invalid to the extent that it was in excess of one-third of the estate which could be bequeathed to charity pursuant to the then existing California *mortmain* statute (formerly Civ. Code, § 1313), the trust for the benefit of the son and the housekeeper was in all respects valid, and the trustee was entitled to hold all of the property of the testatrix until the trust's termination; consequently, the determination of the issue as to whether or not the charitable bequest was in excess of the one-third limitation of the net estate could not be determined until the trust's termination; by reason thereof, all the estate was ordered distributed to the trustee for the purposes of the trust with the determination of final distribution being reserved until the termination of the trust, inasmuch as the provision authorizing the trustee *to invade corpus* for the son's support had the effect of precluding a present determination as to the value of either the life estate or the charitable devise.

Nevertheless, where a life beneficiary of a testamentary trust has the right to receive income only, and does *not* enjoy the right of corpus invasion, it is not necessary to defer the determination as to whether the charitable devise is in excess of the limitations prescribed by section 41 of the Probate Code until the demise of the life beneficiary inasmuch as the value of the life estate and the charitable bequest may be presently actuarily determinable. (*Estate of Nicely, supra,* 235 Cal.App.2d 174, 183.)

However, under the testamentary disposition here involved, the daughter-in-law's beneficial interest consists of the right to receive the income of the trust until her *remarriage or death,* whichever event sooner occurs. The nature of the estate created for the life of the devisee, or until the remarriage of the devisee, is a determinable life estate. (*In re Reinhardt,* 74 Cal. 365, 367 [16 P. 13] ; *Estate of Bernatas,* 162 Cal.App.2d 693, 700 [328 P.2d 539] ; Tiffany, Real Property (3d ed.) vol. 1, p. 80.) This life estate, subject to such condition subsequent, vests the estate in the devisee until the occurrence of the divesting condition, to wit, the remarriage (*In re Ball's Estate,* 14 N.Y.S.2d 889, 890 [172 Misc. 181]) or death.

Under section 41 of the California Probate Code, the

value of the estate is to be ascertained as of the date of distribution in determining whether a testamentary gift to charity violates the statute. (*Estate of Hinckley*, 58 Cal. 457, 517; see *Estate of Bauer*, 59 Cal.App.2d 152, 154-155 [138 P.2d 717]; 11 A.L.R.2d 1142, 1147.) ▮ Thus, the value of Barbara High's estate is presentably ascertainable inasmuch as she survived the testator and has not remarried.

Since the estate herein will apparently be in a condition to be distributed upon resolution of the issues involved in this appeal, following remand of this cause, Barbara's determinable life estate is to be evaluated as an estate for life for the purpose of ascertaining whether the charitable devise to Brown University exceeds one-third of the testator's net distributable estate. The trial court may consider expert actuarial testimony for the purpose of determining the present values of the three successive life estates and the charitable devise to Brown University. The value of the three life estates created by the testamentary trust shall be based on the present value of the right of the beneficiaries to receive the *income* of the trust during their respective lifetimes, commencing "at such time as monthly payments from the insurance policy above mentioned have terminated," as stipulated in the decedent's will herein.

In the event the trial court determines that the present value of the charitable devise to Brown University exceeds the limitation contained in the statute, then the "descendant" of the testator shall be entitled to such excess. (See Prob. Code, § 41.) The amount which is not in excess of the limitation contained in section 41 of the Probate Code shall be distributed to the trustee in trust, for the purposes defined in the testator's will. In the event the trial court determines that the present value of the charitable devise to Brown University does not exceed the limitation contained in section 41 of the Probate Code, the net distributable estate shall be distributed to the trustee, in trust, for the purposes defined in the testator's will.

▮ The trial court is directed to appoint a guardian ad litem of the testator's grandson, Clifford High, for the purpose of protecting the interest of said minor in the decedent's estate and the testamentary trust created therein. Where a minor enjoys a beneficial interest in a trust and the litigation involves the potential destruction of the trust, the appointment of a guardian ad litem is advisable and proper. (See *Loock* v. *Pioneer Title Ins. etc. Co.*, 4 Cal.App.2d 245, 249 [40

P.2d 526]; Code Civ. Proc., §§ 372, 373; see *Mabry* v. *Scott,* 51 Cal.App.2d 245, 256 [124 P.2d 659], cert. den. 317 U.S. 670 [87 L.Ed. 538, 63 S.Ct. 75].) In effecting the appointment of such guardian ad litem, the trial court should *not* appoint the minor's father, Raymond O. High, as such representative because of the legal conflict existing between the father and the son. (See *Loock* v. *Pioneer Title Ins. etc. Co., supra.*)

The decree determining interests in estate is reversed and the cause is remanded with directions to the trial court to appoint a guardian ad litem for Clifford High, a minor, and to conduct further proceedings in compliance with the views expressed in this opinion.

.McCabe, P. J., and Tamura, J., concurred.

, A petition for a rehearing was denied May 24, 1967, and respondent's petition for a hearing by the Supreme Court was denied June 28, 1967.