[Civ. No. 27338.    Second Dist., Div. Four.    Sept. 6, 1963.]

Estate of MERCEDES L. GUTIERREZ, Deceased. ROY A. GUTIERREZ, as Administrator With the Will Annexed, etc., Plaintiff and Respondent, v. ANTHONY L. VILLA et al., Defendants and Appellants; STATE OF CALIFORNIA, Defendant and Respondent.

Price, Postel & Parma, H. Clarke Gaines, Lilian M. Fish and Charles W. Willey for Defendants and Appellants.

Paul C. Hill for Plaintiff and Respondent.

Stanley Mosk, Attorney General, and Carl Boronkay, Deputy Attorney General, for Defendant and Respondent.

BURKE, P. J.—Decedent died leaving a surviving spouse but no issue. She was also survived by a nephew and three nieces, children of her deceased sister. Approximately three years prior to her death she executed a document which, on a prior appeal, was declared to be a will and entitled to probate. (*Estate of Gutierrez*, 189 Cal. App. 2d 165 [11 Cal. Rptr. 51].) The instrument read as follows:

"For Maurice Gutierrez. In case that I should have an illness, or my death, I want my husband (Maurice A. Gutierrez) to have some ready money — so am enclosing two cheques. One to the Bank of Arizona, Prescott, Arizona (saving department, am also enclosing book — in this letter for $35,000. The other cheque to the United States Trust Company of New York, 45 Wall Street, New York — N.Y. for $9,000 — He is to have his share of my estate, which is taken care of by the United States Trust Company of New York, 45 Wall Street — New York — N.Y. and the rest to different charities. Signed Mercedes L. Gutierrez January 13 — 1955."

At the time of death decedent was domiciled at Santa Barbara, California. Her California estate, all her separate

property, consisted of cash and various items of personal property inventoried at a value of $84,581.54. During her lifetime, and while a resident of Arizona, decedent established an *inter vivos* trust naming the United States Trust Company of New York as trustee, reserving a life estate in the trust income and a testamentary power of appointment over the remaining interest. The power of appointment was reserved in the following words: "The trust estate, together with all accrued but uncollected income thereon, shall, upon the death of the Grantor, forthwith be transferred and paid to such person or persons in trust or otherwise as the Grantor may by a duly executed and proved last will and testament direct and appoint; and in the absence of such direction or appointment, then to the persons entitled thereto under the laws of succession of the state in which she resides at the time of her death in the proportions therein specified." In the trust instrument the decedent directed that it be construed and regulated by the laws of New York.

The principal and accrued income of the New York trust at the time of death aggregated $691,000.

The surviving spouse, as administrator with the will annexed, filed his petition for a decree determining heirship. A statement of interest was filed by the Attorney General, as *parens patriae*, asserting that the bequests in the will "to different charities" created a valid charitable trust of the residue of decedent's estate and praying that the court appoint a qualified trustee to receive and administer such bequest. The nephew and three nieces filed their statement of interests in the estate, claiming that each was entitled to a proportionate share of all property not passing under the will of said decedent and, under section 41 of the Probate Code of California, to the excess over one-third of the estate of all property left to charity. The surviving spouse likewise objected to distribution of any charitable bequests in excess of one-third of the estate.

Hearing was had on said petition, findings of fact and conclusions of law were signed and a decree determining heirship entered. The decree declares:

"That upon final distribution, one-third of the net distributable residue of decedent's estate shall go to Maurice A. Gutierrez as surviving husband of the decedent, and the balance shall go to the Santa Barbara Foundation in trust for charitable purposes.

"The Santa Barbara Foundation as trustee, shall distribute the funds so received to worthy organizations engaged ex-

clusively in charitable activities and shall have the power within its discretion to distribute principal as well as income of said trust fund. In carrying out this trust said trustee is directed to give special consideration to those charitable organizations supported by the decedent as set forth in the Findings of Fact herein.

"The administrator herein is directed to take such action as is appropriate to bring about disposition of decedent's trust estate, managed by the United States Trust Company of New York, in accordance with her will as construed by this Court."

Somewhat explanatory of such decree were the court's findings of fact and conclusions of law, the following finding being pertinent:

"By the above quoted portion of her Will, the decedent intended that her husband receive the same share of the assets held in trust by the United States Trust Company of New York as he would take if she had made no Will and that all other property which was subject to her right of disposition, including the remaining assets of said New York trust as well as all her other property, be devoted to charitable purposes."

The nephew and nieces appealed from the above decree. No appeal was taken by the surviving spouse either in his capacity as administrator or in his individual capacity.

After the appeal was taken by the nephew and nieces the surviving husband died and his personal representative has been substituted in his place and has filed a brief resisting the appeal and urging affirmation of the order of the trial court. It is now settled that the right to object to a devise or bequest which violates division I, chapter I, article II, of the Probate Code is personal and must be made by an eligible heir during his lifetime. (*Estate of Bunn,* 33 Cal.2d 897 [206 P.2d 635].) It is also settled that an objection, once filed by such a person, can thereafter be prosecuted to conclusion by his personal representative. (*Estate of Sanderson,* 58 ·Cal. 2d 522 [23 Cal.Rptr. 69, 375 P.2d 37].) Here, as has been noted, the personal representative has not elected to appeal.

The appellant nephew and nieces contend that as blood relatives they are entitled under Probate Code ·section 41 to participate in that portion of the decedent's. estate which exceeds one-third of decedent's estate because Probate Code section 43 was rendered totally inapplicable by the contest of the charitable bequest asserted by decedent's surviving

husband; that as nephew and nieces they qualify as the intestate heirs of the testatrix, entitled to succeed to the excessive charitable bequest under Probate Code section 223.

Appellants also contend that the court erred in its references to the New York trust estate in the order appealed from, asserting that the court had no jurisdiction to determine interests in decedent's *inter vivos* New York trust estate. Without conceding that the trial court did anything more in its order than direct the administrator of the California estate to take appropriate action to bring about disposition of the trust estate in accordance with the court's construction of the will, since we hold that under the proper application of section 41 and section 43[1] of the Probate Code appellants have no interests in the estate, these contentions need not be dealt with. No issue has been raised with respect to the portions of the decree directing that the Santa Barbara Foun-

---

[1] § 41. No estate, real or personal, may be bequeathed or devised to any charitable or benevolent society or corporation, or to any person or persons in trust for charitable uses, by a testator who leaves a spouse, brother, sister, nephew, niece, descendant or ancestor surviving him, who, under the will, or the laws of succession, would otherwise have taken the property so bequeathed or devised, unless the will was duly executed at least 30 days before the death of the testator. If so executed at least 30 days before death, such devises and legacies shall be valid, but they may not collectively exceed one-third of the testator's estate as against his spouse, brother, sister, nephew, niece, descendant or ancestor, who would otherwise, as aforesaid, have taken the excess over one-third, and if they do, a pro rata deduction from such devises and legacies shall be made so as to reduce the aggregate thereof to one-third of the estate. All property bequeathed or devised contrary to the provisions of this section shall go to the spouse, brother, sister, nephew, niece, descendant or ancestor of the testator, if and to the extent that they would have taken said property as aforesaid but for such devises or legacies; otherwise the testator's estate shall go in accordance with his will and such devises and legacies shall be unaffected.

Nothing herein contained is intended to, or shall be deemed or construed to vest any property devised or bequeathed to charity or in trust for a charitable use, in any person who is not a relative of the testator belonging to one of the classes mentioned herein, or in any such relative, unless and then only to the extent that such relative takes the same under a substitutional or residuary bequest or devise in the will or under the laws of succession because of the absence of other effective disposition in the will.

§ 43. Nothing in this article contained shall apply to bequests or devises made by will executed at least six months prior to the death of a testator who leaves no spouse, child, grandchild or parent, or when all of such heirs, by a writing executed at least six months prior to his death, shall have waived the restriction.

dation shall receive the bequests to charity and carry out those provisions of the will as trustee.

To appellants, a strict reading of Probate Code section 43 renders that section inapplicable because the decedent did leave a spouse who not only did not execute a waiver of the statutory limitation on charitable bequests imposed by section 41 at least six months prior to the decedent's death, but actually objected to the charitable bequest to the extent that it exceeded one-third of the decedent's estate. The representative of the surviving spouse and the respondent Attorney General dispute such resolution of the matter, contending that only the specific classes of heirs enumerated in section 43 have any right of contest whatever when the will has been executed six months or more before the testator's death. They contend that collateral heirs have no right to ride in on the ''coat tails'' of one of the enumerated heirs who made objection under section 43 to any excessive disposition to charity.

The Attorney General relies principally on *Estate of Bunn, supra,* 33 Cal.2d 897. In that case the surviving spouse died without having objected to the disposition to charity made by the predeceased wife. It was held that the administrator of the estate of Mrs. Bunn's husband was not in a position to contest the charitable bequest, as the right to object under section 43 was purely personal and, not having been exercised by the husband, would not pass to the representative of the husband as part of his estate. The court stated (at pp. 900-901) : ''Although the question as to who may assert the invalidity of a devise or bequest subject to the provisions of section 43 of the Probate Code has not been directly decided by the appellate courts of California, under the authorities in other jurisdictions the respondents cannot do so because they are not members of the designated class. 'The prohibition contained in the statute is a limitation upon the right of a testator to dispose of his property in accordance with his own inclinations and desires. It should, therefore, be strictly construed against those seeking to invalidate testamentary provisions.' (*In re Plaster's Will,* 266 App. Div. 439 [43 N.Y.S.2d 1, 3].) The Iowa Supreme Court considered hypothetically the situation here presented. 'If such designated parties do not challenge the bequest to charity, it does not lie in the mouth of any other person to challenge it. It may often happen that a testator will make a bequest to charity . . . and leave a surviving spouse, and the spouse will fully acquiesce in such charitable bequest and wish that the will be carried out in

its entirety. Could it be said that, under the statute, the mere fact of the existence of a surviving spouse would enable some other person, such as a distant collateral heir, to challenge the bequest to charity? We think not.' (*Karolusson* v. *Paonessa*, 207 Iowa 127 [222 N.W. 431, 433] ; see, also, *In re Korzeniewska's Estate*, 163 Misc. 323 [297 N.Y.S. 997] ; *Matter of Hills*, 264 N.Y. 349 [191 N.E. 12, 93 A.L.R. 1380].) Nor is the administratrix of the estate of Mrs. Bunn's husband in any better situation, for the right to contest a will on this ground has been held to be purely personal, to be narrowly restricted, and one which does not pass to the representative of a decedent as a part of his estate. (*In re Webster's Estate*, 178 Misc. 342 [33 N.Y.S.2d 862].)''

■ Statutes in derogation of charitable bequests and devises are enacted on the theory of protection of heirs at law, who, as a matter of natural right, are deemed more entitled to the testator's bounty than indefinite beneficiaries of charitable institutions. In *Estate of Dwyer*, 159 Cal. 680 [115 P. 242], the court declared that the legislative restriction on bequests to charity was not intended as a *mortmain* statute or as declaratory of any public policy relative to charitable dispositions by will, but that its purpose was to protect the heirs at law against hasty and improvident gifts by the testator of his entire estate to charity and to the exclusion of those who in the judgment of the Legislature had a better claim to his bounty.

In the case before us the will was not the hasty and improvident type of document against which the statutes in derogation of charitable bequests were designed. The will was executed three years before death. The trial court interpreted the will as declaring the decedent's intent to leave the·remainder of her separate property to charity after making generous. provisions for her surviving husband. This was entirely within her right to do and, as stated in *Estate of Bunn, supra,* any statute imposing a limit upon such right should be strictly construed against those seeking to invalidate such testamentary provisions.

■ Insofar as pertinent here, the court in *Bunn* declared that the husband's survival would not entitle other heirs not in the classes mentioned in section 43 to challenge the charitable bequest; that before such a bequest (one made at least six months before death) may be invalidated some one of the named class must seek to take advantage of the section. In *Bunn* the objecting. heirs were not within the classes of

heirs enumerated in section 43, and therefore were held not entitled to object to the charitable bequest. (*Estate of Bunn, supra,* at p. 900.) Thus, as the legislative intent is interpreted by *Bunn,* where there are heirs surviving within the classes named, section 43 is not self-executing. Where wills are made at least six months before death, the existence of a surviving spouse, child, grandchild or parent (who has not joined in a waiver) does not automatically void such a bequest. ▮ Furthermore, where a spouse, child, grandchild or parent objects to such a bequest the benefits of the objection are not extended to others falling within the enumerated classes in section 43 because, under the reasoning of *Bunn,* the court will assume that by not objecting they have acquiesced in decedent's bequest to charity. Since *Bunn* holds that the right to object is personal, the benefits which flow therefrom are personal and extend only to those of the enumerated classes who have filed objections. *Estate of Sanderson, supra,* 58 Cal.2d 522, holding that once the objection is made by one entitled to object his right thereby becomes a property right which his personal representative may pursue to conclusion, does not detract from the personal nature of the right to object.

Finally, it should be noted that in section 41 the Legislature was dealing with hasty and improvident bequests. There it sought to protect a broad class of heirs who but for such bequests would otherwise take from decedent, including brothers, sisters, nephews, nieces, decedents or ancestors; first, by declaring such charitable bequests void in their entirety if made within 30 days before death, and, second, by declaring void bequests of over one-third of the testator's estate if made at least 30 days before death.

▮ The restrictions on charitable bequests specified in section 41 are modified by the succeeding sections of the Probate Code. Section 42, for example, exempts from the restrictions bequests to the state, city, county or tax-exempt educational institutions.

▮ Section 43 further modifies the restrictions of section 41 by exempting from the application of the section all wills which have been executed at least six months before death, where no spouse, child, grandchild or parent survives the decedent. Read in conjunction with section 41, the right of brother, sister, nephew, niece, descendant (other than child or grandchild) or ancestor (other than parent) to object to charitable bequests in wills relates only to wills made

within six months before death of the testator. On the other hand, as to spouse, child, grandchild or parent, the right to object continues indefinitely beyond the six months' period irrespective of how long before death the will was executed. It is significant that, even as to the limited class of heirs who may object under section 43, the Legislature provided that the limitations under section 41 would not apply if the members of such class joined in a written waiver signed at least six months before the testator's death. Such a provision is entirely inconsistent with the interpretation sought to be placed upon the section by appellants, who assert that the right accorded them under sections 41 and 43 as nephew and nieces is in the nature of a property right of which they cannot be divested in the event decedent leaves surviving one of the restricted class mentioned in section 43. If such had been the intention of the Legislature, would it have provided that such a property right of a niece or nephew could be terminated by the independent action of the restricted class of heirs referred to in section 43 joining in the written waiver? Would not the Legislature have required nieces and nephews and other more remote heirs mentioned in section 41 also to join such a written waiver since their rights also were involved? We believe that it is more reasonable to assume that by naming only "spouse, child, grandchild or parent" in section 43 the Legislature intended in this particular section to protect only these immediate members of a testator's family; that it clearly intended to classify them in a special category as distinguished from the more inclusive group of relatives referred to in section 41.

It follows that if we were to hold that the filing of an objection by any one of the classes of relatives mentioned in section 43 would have the effect of extending the benefits of such objection to the more remote relatives included in section 41, then in effect we would be rewriting section 43 and extending its benefits to the broader list enumerated in section 41. On the other hand, by following the limitations inherent in the *Bunn* case we are restricting the benefits of section 43 to the more restricted class specifically named by the Legislature in that section.

The order appealed from is affirmed.

Jefferson J., and Kingsley, J., concurred.

A petition for a rehearing was denied October 3, 1963, and appellants' petition for a hearing by the Supreme Court was denied October 23, 1963.