243 Cal.App.2d 221 (1966)
Estate of THOMAS B. REARDON, Deceased. JOHN P. McCORMACK, as Executor, etc., et al., Petitioners and Appellants,
v.
THE CATHOLIC CHURCH EXTENSION SOCIETY OF THE UNITED STATES OF AMERICA, Claimant and Appellant; JOHN E. REARDON et al., Claimants and Respondents.
Civ. No. 22924. 
California Court of Appeals. First Dist., Div. Three. 
June 28, 1966.
 Stewart & Tuttle and W. K. Stewart for Petitioners and Appellants.
 Andrews, Andrews & Thaxter and James F. Thaxter for Claimant and Appellant.
 Burnett, Burnett, Keough & Cali and John M. Burnett for Claimants and Respondents.
 DEVINE, J.
 This case involves the statutory restrictions on testamentary charitable gifts.
 Facts
 Thomas B. Reardon died April 19, 1932, leaving a will which he had executed January 6, 1930. His heirs were Mary A. Reardon, his wife; three sisters; and two children of a predeceased brother, John E. Reardon and Dorothy Reardon. A small amount of the estate was community property. The will provides that the widow may allow her community share to go into the trust described below, or may take it outright without diminishing her benefits under the trust. The widow took it outright. The rest of the estate was the testator's separate property. Part of this property, amounting to about one-seventh of the total value, is bequeathed outright to the widow. The remaining six-sevenths is given to a trustee bank to be deposited into four separate trusts. One-half of the total distributed to the trustee is for the benefit of the spouse and one-sixth for each of the three sisters. When the testator died, his spouse's age was 46; the ages of his sisters were 62, 69 and 72. On the death of any sister, the property in her trust is to go to the trust for the spouse. If the spouse were to die before any sister or sisters, the property should be continued in trust for her or their benefit. Finally, upon the death of the last survivor, whether spouse or sister, all of the estate is devised and bequeathed to The Catholic Church Extension Society of the United States of America, which, all parties agree, is a charitable institution within the meaning of the statutes, and which shall be referred to as the "Charity." The will provides for invasion of the principal for the care and support of the individual beneficiaries, at the discretion of the trustee. The will makes no bequest to the testator's nephew and niece, but expressly excludes any other, whether heir or not, than the legatees. At the time of distribution to the trustee, the net estate was valued at $37,761.62.
 One of the sisters died during administration, so that from *225 the beginning of the trust the widow received four-sixths of the income. The second sister died about eight years after the testator, and thereafter the widow received five-sixths of the income. The third sister died in 1947, so that from that time until her death in 1963 the widow received the entire income. By 1963, this came to more than $800 per month. She died December 31, 1963. The estate, which consisted in part of real property, had increased in value to about $300,000. Income had been distributed to the beneficiaries throughout the years and there had been two distributions of corpus, of $500 each, to the sisters.
 Orders Made by the Superior Court
 In the decree of distribution, made on May 28, 1936, the court "finds and decides that it is impossible for said Court to determine at the date of the making of this decree whether or not such charitable bequest to The Catholic Church Extension Society of the United States of America is in excess of one- third (1/3) in value of the distributable assets of the said deceased Thomas B. Reardon, and that said Superior Court should reserve the right to determine to whom and in what proportion the property which remains in the hands of said trustee at the termination of the trust created by said decedent in his last will and testament shall pass and be delivered."
 Upon the termination of the trust, at the death of the widow, three "parties" made claim to the estate in proportions at variance with each other. (We consider the nephew and niece to be one party, the widow's legatees a second, and the Charity the third.) The Charity contended, and still does, that it is entitled to the entire residue of the estate. The nephew and niece contended that they were entitled to two-thirds of the estate, but are now content with supporting the court's order, which awards them one-third. The executors of the will of the widow, Mary A. Reardon, contend that the Charity is entitled to one-third and that they, the executors, are entitled to two-thirds for distribution after administration to the legatees (nephews) of Mary A. Reardon. The court's decision awarded one-third to each of the three "parties." The reference in the decree to John P. McCormack and William J. McCormack is that they are "the heirs at law" of Mary A. Reardon and that they "shall share by right of representation equally in the portion of the Trust Estate going to the Estate of Mary A. Reardon." There are references in the briefs to the McCormacks as the sole legatees of Mary A. Reardon. *226 But whether they are considered legatees or heirs, unquestionably whatever rights they have derive from the relationship of their aunt as spouse of Thomas B. Reardon.
 The Statutes
 In 1932, when the testator died, section 41 of the Probate Code provided that no charitable gift may be made unless done by will executed at least 30 days before the date of death of the testator. If made 30 days before death, the gifts are valid but may not collectively exceed one-third of the estate of a testator who leaves legal heirs; if there is such excess, pro rata deduction shall be made. All dispositions made contrary to this section are declared void and shall go to the residuary legatees or devisees or heirs, according to law. Section 43 of the Probate Code provided in part, and still does, that: "Nothing in this article contained shall apply to bequests or devises made by will executed at least six months prior to the death of a testator who leaves no spouse, child, grandchild or parent."
 [1] There have been amendments to section 41 since the death of the testator (Stats. 1937, ch. 480, 1, p. 1435; Stats. 1943, ch. 305, 1, p. 1296), the chief effects of which have been:
 1. The restriction on charitable gifts no longer exists if the testator leaves "legal heirs," but only in cases where a testator leaves a spouse, brother, sister, nephew, niece, descendant or ancestor, and only where these would otherwise take under the will or the laws of succession.
 2. Reference to excess gifts as being void is deleted, and the section says that property bequeathed or devised contrary to the section "shall go" to the specified heirs to the extent that they would have taken but for the excess devises or legacies.
 The Nephew and Niece
 The reasoning of the judge when deciding that the nephew and niece shall receive one-third of the estate is given in a memorandum opinion. It is this: In 1932, the statute made "void" an excess charitable gift. The gift being void, the laws of succession come into play. The heirs take as if the testator had died without leaving a will. Under Probate Code section 223 the nephew and niece take one-half of the two-thirds remaining after the Charity's one-third, and therefore take between them one-third, the final third going to the widow's legatees. This interpretation, however, overlooks the effect of Probate Code section 43, which, as interpreted in Estate of *227 Bunn, 33 Cal.2d 897, 900 [206 P.2d 635], precludes the nephew and niece from taking because the will was executed more than six months before the testator's death. Section 43 existed in exactly the same form in 1931 as it did at the time of Estate of Bunn (1949) and as it has ever since. It was the reasoning of the court in Estate of Bunn that as to wills executed more than six months prior to death, the class of heirs protected against excess charitable dispositions is limited to those mentioned in section 43. This does not include nephews and nieces. Nor would any advantage be gained by a nephew or niece if it were established that challenge were made by one of the heirs designated in section 43, such as a spouse. (Estate of Gutierrez, 220 Cal.App.2d 6, 9-10 [33 Cal.Rptr. 593].)
 [2] Probate Code section 223 does not apply for, although it would be the statute applicable in cases of intestacy, in cases of excess dispositions to charity sections 41 and 43 govern. They are themselves statutes of succession. (Estate of Nicely, 235 Cal.App.2d 174, 184 [44 Cal.Rptr. 804].) [3] The effect of the deletion of the word "void" by amendment to section 41 in 1937 is discussed more fully in another part of this opinion, but at this point we conclude that the fact that certain excessive charitable dispositions were described as void is not of assistance to the nephew and niece. They simply are not in the preferred class designated in section 43, the only class which gains any protection in the case of a will executed before the six months' period. Estate of Bunn was not decided until some 17 years after testator's death, but since it construes the statute which existed in exactly the same form at that time, the interpretation operates retrospectively. (Tate v. Superior Court, 213 Cal.App.2d 238, 249 [28 Cal.Rptr. 548].)
 The nephew and niece also argue that even if the decree of 1936 were erroneous, it is res judicata in their favor because of the lack of appeal. They argue that if the judge had thought that they, the nephew and niece, were without standing to challenge the charitable devise, he would have said so in the decree. But the judge merely reserved the right to decide to whom the residue should pass upon termination of the trust. [4] A judgment is not an adjudication as to matters which the court expressly refrains from determining. (Stark v. Coker, 20 Cal.2d 839, 843 [129 P.2d 390].) [5] The nephew and niece never have had any rights against the disposition to the Charity because the will was executed more than six months prior to the death of the testator. *228
 The Legatees of the Will of Mary A. Reardon
 a. Necessity of challenge
 The first question affecting the rights of the McCormacks, the nephews and legatees of Mary A. Reardon, is whether it was necessary for Mary A. Reardon to have asserted a challenge to the bequest to the Charity. By decisions rendered upon sections 41 and 43 of the Probate Code since the amendment of the former in 1937, it is established that a right to challenge a gift to charity as exceeding the allowable one-third is purely personal and cannot be exercised by anyone other than the statutorily protected heirs. (Estate of Bunn, supra, 33 Cal.2d 897, 900- 901; Estate of Hughes, 202 Cal.App.2d 12, 16-17 [20 Cal.Rptr. 475]; Estate of Adams, 164 Cal.App.2d 698 [331 P.2d 149].) If the protected heir personally files a challenge, his claim attains the nature of a property right and is not cut off by his subsequent death. (Estate of Sanderson, 58 Cal.2d 522, 526 [25 Cal.Rptr. 69, 375 P.2d 37].) But what interpretation shall be given to section 41 as it read in 1932? The Charity contends that even as to wills taking effect at that time challenge was necessary; the spouse's legatees contend that the gift is void as to its excess over one-third of the estate, and that no action by the surviving spouse by way of asserting a claim to the excess was necessary.
 [6] Section 43 establishes a relationship between charitable bequests and a limited class of protected persons (spouse, lineal relations) as to wills of more than six months' duration. It provides that nothing in the statutes shall apply to this kind of will if no one of the limited class of persons survives. A charity may take the whole estate. [7] But if such person, for example, a spouse, did survive, was it the purpose of the statute to render charitable donations in excess of one-third invalid, even for the benefit of strangers to the testator who might be successors to the spouse's property rights upon her death? Or was it the purpose to protect the spouse personally if she chose to assert protection, and to convert her personal right to a property right only if she chose to take issue with her husband's benevolent donation? We believe it was the latter, because of the unwavering policy of the law of this state in favor of charities and against applying the concept of mortmain. Therefore, the word "void" (which, incidentally, does not appear in section 43) ought to be deemed not to make section 41 self-executing as to wills beyond six months, but to relate to the particular persons *229 named in section 43 and to their choice to defeat the donation above one-third of the estate or to allow it to stand.
 Our reasons are these:
 [8] 1. It is firmly established that our statutes are not those of mortmain. They are not and never were intended to penalize charities. Their object has always been to protect those who have a better claim to the testator's bounty. (Estate of Dwyer, 159 Cal. 664, 687 [115 P. 235].) [9] The restricting statutes are strictly construed because they operate against the intention of the testator. (Estate of Bunn, supra, 33 Cal.2d 897, 900; Estate of Gutierrez, supra, 220 Cal.App.2d 6, 12; Estate of Hughes, supra, 202 Cal.App.2d 12, 17.) [10] Probate Code section 43 is intended to protect certain persons having a preferred claim to the testator's bounty. A spouse is among these. The statute is not designed to protect the heirs or assigns of the benefited classes. The Legislature did not consider them to have a better claim to the testator's bounty. (Estate of Nicely, supra, 235 Cal.App.2d 174, 184.)
 [11] 2. The words "void" or "invalid," when appearing in statutes which are not for the benefit of the public at large, are regarded as equivalent to "voidable" where none other than a particular person or class of persons is the object of the statutory protection. In Gee v. Moore, 14 Cal. 472, 474-475, alienation by the husband only of homesteaded property was sustained although the statute declared that such alienation, without the wife's acknowledged signature, was invalid; where, in fact, the wife had died leaving no children and there was no one living whom the statute was designed to protect. The court pointed to the parallel with a holding that despite a statute declaring usurious mortgages to be utterly void, such mortgages are void only as against the mortgagor and those holding under him (p. 475).
 3. The decision in Estate of Bunn, supra, 33 Cal.2d 897, holding the right to challenge charitable bequests to be purely personal, is not stated to be on the ground of change made in Probate Code section 41 in 1937, but on acceptance of the reasoning of courts in other states, and in particular that expressed in quotation (pp. 900-901) from Karolusson v. Paonessa, 207 Iowa 127 [222 N.W. 431, 433], to the effect that a surviving spouse may fully acquiesce in a charitable bequest, and that the mere existence of such spouse should not enable a distant collateral heir to challenge the bequest.
 4. That the true purpose of the statute should control over a literal interpretation was shown by the court in Estate of *230 Bunn, supra. Probate Code section 43 provides that nothing in the article shall apply to a testator who leaves "no spouse," and Mrs. Bunn did leave a spouse. By strictly literal construction, this would mean that section 43 would not be operative, that section 41 would apply, and that the class protected in the latter section would benefit from the excess gift. The court, however, interpreted section 43, despite its being cast in negative form, as creating an affirmative right for the limited class of persons designated in the section to challenge a will of more than six months' age. We are disposed to regard the statutes in like manner in order to effectuate their purpose.
 5. It is true that in Estate of Campbell, 175 Cal. 345, 352 [165 P. 931], the court refers to a protected heir's claim as "an interest that he can convey or dispose of by will, and that, if he dies intestate, will pass to his heirs." But in that case a determined challenge had been made by the protected heir.
 In Estate of Hughes, supra, 202 Cal.App.2d 12, there is, to be sure, reference to the fact that the charity-limitation statute before 1937 provided that excess dispositions shall be void, and this reference was given as a distinction between Estate of Hughes and Estate of Campbell. The reference, however, is tangential only and was made by way of distinguishing dictum in the Campbell case, wherein challenge had been made.
 [12] Because the limitations on charitable dispositions of property never have been directed against charities in this state, and their sole purpose has been that of protecting particular persons who may be aggrieved by a surplus eleemosynary sentiment of a testator, especially as he nears the end of life, we conclude that the principle that the right to contest charitable bequests is purely personal applies to bequests and devises made before as well as after the 1937 amendment.
 b. Whether challenge was made
 The legatees of the will of Mary A. Reardon assert that if objection were necessary, actually it was made. This was at the time, they say, of the petition for distribution by Mary A. Reardon and the Bank of America, National Trust & Savings Association, as executrix and executor, respectively, dated March 31, 1936. There is nothing in the petition for distribution itself which relates in any way to the subject. The legatees say, however, that the reservation made in the order for distribution, of decision as to who should take and in what amount, shows that the subject of the charitable disposition had been brought before the court. They have requested us to *231 make part of the record on appeal the briefs which were filed by the respective parties immediately before the decree of distribution; and they argue that these will show that objection to excessive charitable donation was made. We have granted their request and have caused the briefs to be filed.
 The nephew and niece of Thomas B. Reardon had attacked the trust, possibly on the ground of excessive charitable donation (this is not clear from the briefs), but certainly upon the ground that a trust which gives the trustees sole discretion to determine the amounts of principal which may be taken for the support of the beneficiaries is invalid. The Charity and the executrix and executor took issue with this proposition, successfully. Much of the contest among the parties at that time had to do with this feature of the will. [13] There are but two references in the brief of the executrix and executor to limitations upon charity. The first is a statement that section 41 of the Probate Code does not apply for the benefit of legal heirs generally because the will was executed more than 30 days prior to death. The second is that the exemption in section 43 does not apply because there was left a surviving spouse, and that, therefore, the restrictions as to the amount of the devises remain effective, although the amount cannot presently be ascertained. This is the sole statement in the record proposed by the legatees as declaring an objection to the charitable devise. Not once in the 27 years between the decree of distribution and her death, did Mary A. Reardon take any action by way of challenging the Charity. The will of Mary A. Reardon was not introduced in evidence. We take it that if Mary A. Reardon had expressed in some way in her will a challenge to the charitable disposition, or if she had expressly bequeathed to her legatees the excess over one-third of her husband's estate, her will would have been made part of the record by her legatees. The absence of the will suggests that even if she could have changed her personal right to a property right by her will, she did not actually do so.
 We do not find the single reference in the 1936 brief to constitute a protest against the Charity. It is impersonal because it is a brief filed, so far as Mary A. Reardon is concerned, by her counsel acting for her in her capacity as executrix and not in her individual right. The bank, which was executor, was also the trustee and, of course, had an interest in protecting the trust. The same law firm represented the executrix and the bank. The brief is vague. It does not assert that the widow does or will make any protest. It was uncertain *232 at that time whether the trust would be terminated by the death of the spouse or by that of one of the sisters. Estate of Bunn had not yet been decided, so that the claim of the nephew and niece was an uncertain matter. The amounts which might be paid to the beneficiaries, whether as income or disbursements of corpus, were unknown.
 The legatees say that in Estate of Lingg, 71 Cal.App.2d 403, [162 P.2d 707], it was said that the widow could have asked for such form of distribution as would have reserved the question of excess charitable donation until the excess could be ascertained (p. 407). This, say the legatees, recognizes that action of this kind by the widow is sufficient to show her choice to bring into operation the restrictions against the Charity. In Estate of Lingg, the widow had consented to the very distribution to the charity which was under attack, so that the petition for distribution which she might have made is purely hypothetical. The opinion does not go on to explain how personal or how definite such petition would have to be. Whether it would suffice if done by the widow as an executrix is not mentioned. But in the case before us, the petition for distribution says nothing at all on the subject.
 We conclude that under all the circumstances the impersonal and indefinite reference made in counsel's brief of 1936 is not sufficient challenge by the spouse in her own right to defeat the testator's donation, and to vest two- thirds of his estate in persons unrelated to him.
 c. Estoppel
 [14] The legatees argue that the Charity is estopped by reason of its having agreed in 1936 that ascertainment of the distributees should be postponed until the termination of the trust. We find no such estoppel. The ruling in Estate of Bunn would not come until 13 years later. It was possible, too, that any amount of the estate would be taken for the needs of the life beneficiaries.
 Moreover, in its 1936 brief the Charity makes the point that "a charitable trust created more than six months before death did not come within the last provision or exception in Civil Code 1313 (Probate Code 41) where none of the designated heirs are left"; and cites Estate of Bartlett, 122 Cal.App. 375 [10 P.2d 126], as authority for this proposition. We make this observation simply by way of pointing out that the Charity, by requesting postponement, was not acceding to the proposition now advanced by the legatees of Mary A. Reardon. *233
 Aids to Interpretation
 In our construction of the effect of the statutes, we have in mind the persons involved and the effect of our interpretation upon each of them.
 a. The testator
 Obviously, the testator's desire was to favor the Charity after he had taken care of those near and dear to him. His was not a hasty and improvident will. (See Estate of Gutierrez, 220 Cal.App.2d 6, 12 [33 Cal.Rptr. 593].) His sisters were much older than his wife, and no doubt he contemplated the probability that his spouse would enjoy the entire income, as indeed she did, for many years. He had declared that anyone who objected to any of the provisions of the will should be left one dollar. No doubt he had not the slightest premonition that his wife's nephews, more than 30 years after his death, would assert a claim against his cherished charity. Probably he had confidence that his wife would do nothing to disturb his wishes.
 b. The wife
 The community property was not sizeable, perhaps because the marriage was brief or because little saving had been possible. The bulk of the estate was the husband's. The home was left to the wife. She was supported by the income for three decades. If she felt herself aggrieved by the husband's bequest to the Charity when she could no longer have personal enjoyment of any property, she did not say so for the record.
 c. The nephew and niece
 For whatever reason, the testator chose not to make them his legatees. If they had some expectation of ultimate sharing, this was cut off by Estate of Bunn in 1949.
 d. The spouse's legatees
 The testator was under no obligation by ties of blood or by statute to take care of them. If they were to take two-thirds of the estate by reason of their aunt's survival of the testator, they would be promoted to a position superior to that of the testator's presently surviving heirs of nephew and niece. But more than this, they, unnamed in the statutes, would defeat in major part the wishes of the testator. In effect, this would be a conversion of the purpose of the statutes from that of protecting those who by close relationship to the testator should have preference to that of penalizing a charity. *234
 e. The Charity
 Since the death of Thomas B. Reardon in 1932, the Charity has received nothing. Meanwhile, as was quite proper, the widow received substantial income and would have received the principal of the trust had it been necessary.
 Valuation
 The Charity contends that it was error for the trial court in any event to limit the Charity's share to one-third of the estate on hand without taking into consideration the invasion of corpus, the share given outright to the spouse, and the value of the life estates. Because of our principal ruling, we need not decide this question, a subject on which there is little, if any, law in this state.
 Decision
 The judgment is reversed, with direction to the court to follow the will of the testator and to distribute the entire remainder to The Catholic Church Extension Society of the United States of America. Each party to bear own costs on appeal.
 Draper, P. J., and Salsman, J., concurred.