[Civ. No. 37602. Second Dist., Div. Four. Aug. 25, 1971.]

Estate of HELEN L. BASORE, Deceased.
HOWARD E. BASORE, Petitioner and Respondent, v.
PASADENA HOME FOR THE AGED, Claimant and Appellant;
JAMES O. ROSS, as Special Administrator, etc., et al.,
Claimants and Respondents.

## COUNSEL

Hahn & Hahn and William G. Hahn for Claimant and Appellant.

Willard J. Stone for Petitioner and Respondent.

Herschel B. Green and Jon Terence Green for Claimants and Respondents.

## OPINION

**DUNN, J.**—This is an appeal from a decree determining heirship in, and distribution of, the estate of Helen L. Basore, deceased.

On February 14, 1950, Helen Basore, then unmarried, executed a will. After making two $500 bequests to her cousins, testatrix directed that the residue of the estate was to be impressed with a spendthrift trust for the maintenance of her brother, Howard E. Basore. Upon Howard's death the trust was to terminate and the residue was to be distributed in equal shares to the Casa Colina Hospital for Rehabilitative Medicine and the Pasadena Home for the Aged.[1] The will further provided that any person

---

[1] These are the names by which such beneficiaries now are known. They were designated in the will as the Casa Colina Convalescent Home for Crippled Children and the Scripps Home for the Aged, respectively.

who opposed or contested the whole or any portion thereof should receive nothing from the estate. In a codicil executed March 5, 1959, the testatrix revoked the two $500 bequests, but confirmed the will in all other respects.

On June 1, 1966, the testatrix married Matthew Stanley Preston. She died August 27, 1968, leaving an estate consisting of both separate property and community property. Testatrix's husband died September 24, 1968, thus surviving her by less than a month. Her will was admitted to probate October 1, 1968.

On May 29, 1969, Howard Basore, the brother, filed a "petition for determination of heirship." (Prob. Code, § 1080.) Petitioner alleged that he was entitled not only to a life income from the trust in the residue, as provided in the will, but also to distribution of "that portion of the residue . . . which exceeds the amount [one-third] distributable to charity" (Prob. Code, §§ 41, 43). The petition concluded with a prayer that the court determine to whom and in what proportions the estate should be distributed.

On June 17, 1969, a statement of interest in the estate (Prob. Code, § 1080) was filed by claimant James O. Ross as special administrator with general powers of the estate of decedent Matthew Preston. Ross claimed one-half the community property in testatrix's estate. In addition, on the ground that the will was executed before her marriage to Preston, and was not thereafter modified to provide for him, Ross also claimed that portion of her estate to which Preston was entitled under Probate Code section 70.[2]

Statements of interest were filed also by Pasadena Home for the Aged and Casa Colina Hospital, the residuary beneficiaries of the remainder. These claimants alleged that petitioner Basore was not entitled to any portion of the residue because the charitable bequests were made by will executed more than six months before testatrix's death, and petitioner was not among the class of heirs entitled to have such bequests limited to one-third of the estate. Claimants further asserted that the allegations of the petition constituted opposition to or contest of a portion of the will within the meaning of the in terrorem clause.

A hearing was had on the petition and the statements of interest. Findings of fact and conclusions of law were signed and filed. The court

---

[2]Probate Code section 70: "If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation can be received."

found the following facts: testatrix's sole surviving heirs were her husband, Matthew Preston, and her brother, Howard Basore; the will and codicil were executed more than six months prior to her death, and before her marriage; they did not provide for her husband, nor did they mention him in such a way as to show an intention not to make such provision; by filing the petition to determine heirship, Howard Basore did not oppose or contest the whole or any part of the will within the meaning of the *in terrorem* clause; the estate consisted of separate property of the testatrix and community property of her and her husband.[3] From these findings, the court concluded: Howard Basore did not forfeit his right to take under the will, but he was not entitled to any portion of the charitable bequests; under Probate Code section 70, the will and codicil were revoked as to testatrix's surviving husband.

A decree was entered revoking the will and codicil as to Preston, and declaring that his right to succeed to testatrix's property (Prob. Code, § 70) passed to claimant Ross as special administrator of Preston's estate. The decree further ordered that all the community property and half the separate property be distributed to Ross, and that the remainder of the separate property be distributed as provided in the will and codicil.

Pasadena Home for the Aged appeals from the decree.[4] (Code Civ. Proc., § 904.1, subd. (k); Prob. Code, § 1240.) Appellant contends: (1) Ross was not entitled to any portion of the estate because Probate Code section 70 creates a right of revocation which is personal to the surviving spouse, and as Preston died without exercising such right it could not thereafter be asserted by the representative of his estate; and (2) in filing his petition for determination of heirship, Howard Basore violated the *in terrorem* clause of the will, thereby forfeiting his interest in the estate.

## 1. *Probate Code Section 70*

■ It is undisputed that the testatrix married Preston after executing her will and codicil, and that she did not provide for or mention him in these testamentary documents, or in a marriage contract.[5] Therefore, when he survived her, section 70 operated to revoke the will as to him, regardless

---

[3]The court found that there were 20 items of separate property and 3 items of community property. However, the total value of the property in each category was not determined.

[4]The notice of appeal states that the appeal is from those portions of the decree which are set forth in the preceding paragraph of this opinion. Such provisions constitute the entire decree, except for the description therein of the various items of separate property and community property.

[5]At the hearing it was stipulated by all parties that "no provision was made by decedent for her spouse by a marriage contract."

of what may have been the wishes of the testatrix. (*Estate of Duke* (1953) 41 Cal.2d 509, 512 [261 P.2d 235].) He thereby succeeded to that share of her estate which he would have taken had she died intestate. (*Estate of Stewart* (1968) 69 Cal.2d 296, 298 [70 Cal.Rptr. 545, 444 P.2d 337]; *Estate of Tassi* (1961) 196 Cal.App.2d 494, 502 [16 Cal.Rptr. 616]; *Estate of Piatt* (1947) 81 Cal.App.2d 348, 349-350 [183 P.2d 919]; 4 Witkin, Summary of Cal. Law (7th ed. 1960) Wills and Probate, § 41, p. 3030.)

As testatrix's surviving spouse, Preston succeeded to half the separate property (Prob. Code, § 223) and all the community property in her estate (Prob. Code, § § 70, 201; *Estate of Piatt, supra,* 81 Cal.App.2d at p. 350). Upon her death, title to such property automatically vested in him, and was perfected without the necessity of any act on his part. (Prob. Code, § 300; *Estate of Berk* (1961) 196 Cal.App.2d 278, 282 [16 Cal.Rptr. 492]; *Estate of Meyer* (1951) 107 Cal.App.2d 799, 810 [238 P.2d 587].) Hence, before Preston's death he held title to the property to which he had succeeded under section 70. After his death the representative of his estate was entitled to the possession of such property. (Prob. Code, § § 571, 581.)

Appellant contends section 70 does not have this effect because the word "revoked" therein means "revocable"; therefore, the surviving spouse has only a right of revocation; and as Preston did not exercise that right it was extinguished upon his death and did not pass to Ross, the representative of his estate.

In support of this contention, appellant relies upon decisions interpreting Probate Code sections 41[6] and 43,[7] which provide in essence that a testator

---

[6]Probate Code section 41: "No estate, real or personal, may be bequeathed or devised to any charitable or benevolent society or corporation . . . by a testator who leaves a spouse, brother, sister, nephew, niece, descendant or ancestor surviving him, who, under the will, or the laws of succession, would otherwise have taken the property so bequeathed or devised, unless the will was duly executed at least 30 days before the death of the testator. If so executed at least 30 days before death, such devises and legacies shall be valid, but they may not collectively exceed one-third of the testator's estate as against his spouse, brother, sister, nephew, niece, descendant or ancestor, who would otherwise, as aforesaid, have taken the excess over one-third. . . . [¶] Nothing herein contained is intended to, or shall be deemed or construed to vest any property devised or bequeathed to charity . . . in any person who is not a relative of the testator belonging to one of the classes mentioned herein, or in any such relative, unless and then only to the extent that such relative takes the same under a substitutional or residuary bequest or devise in the will or under the laws of succession because of the absence of other effective disposition in the will."

[7]Probate Code section 43: "Nothing in this article contained shall apply to bequests or devises made by will executed at least six months prior to the death of a testator who leaves no spouse, child, grandchild or parent, or when all of such heirs, by a writing executed at least six months prior to his death, shall have waived the restriction."

may not bequeath more than one-third of his estate to charity if he leaves heirs of certain designated classes. It should be noted that neither of these statutes states that excessive charitable bequests are revoked, void or invalid as to such heirs. The apparent purpose of sections 41 and 43 is to strike a balance between the policy of favoring charities and the policy of protecting certain persons regarded by the law as having a preferred claim to the testator's bounty. (See *Estate of Reardon* (1966) 243 Cal.App.2d 221, 228-229 [52 Cal.Rptr. 68].) In view of these considerations, it has been held that excessive charitable bequests are not automatically void, but merely voidable at the instance of an aggrieved heir of a designated class. (*Estate of Goyette* (1968) 258 Cal.App.2d 768, 774 [66 Cal.Rptr. 103]; *Estate of Gutierrez* (1963) 220 Cal.App.2d 6, 13 [33 Cal.Rptr. 593]; *Estate of Adams* (1958) 164 Cal.App.2d 698, 701 [331 P.2d 149]; *Estate of Davison* (1950) 96 Cal.App.2d 263, 266 [215 P.2d 504].) The right to object to such bequests is purely personal to the heir, and upon his death does not pass to his representative as part of his estate. (*Estate of Bunn* (1949) 33 Cal.2d 897, 900-901 [206 P.2d 635]; *Estate of Reardon, supra,* 243 Cal.App.2d at pp. 228-229; *Estate of Gutierrez, supra,* 220 Cal.App. 2d at p. 9.)

We do not believe section 70 may be given a like interpretation. That statute expressly provides that a will is *revoked* as to a surviving spouse. Its underlying policy is the "social disfavor toward a testator's failure to provide for a surviving spouse." (*Estate of Duke, supra,* 41 Cal.2d at p. 512.) Hence, unlike sections 41 and 43, neither the language nor the purpose of section 70 justifies the conclusion that a will is not revoked as to a surviving spouse and is merely revocable at his election.

Appellant argues it is illogical to allow Preston's estate to take his intestate share of his wife's property because this benefits only his legatees or heirs, whereas the purpose of section 70 is to benefit the surviving spouse, personally. In other words, appellant contends the spouse not only must survive the testator, but must survive long enough to take and enjoy the property to which he has succeeded. There is nothing in section 70 which supports this contention. The statute plainly provides that if a person marries after making a will and is survived by his spouse, the will is revoked as to the spouse unless the testator has provided for or mentioned him in the will or a marriage contract. If revocation is not to be effective unless the spouse also survives long enough to receive and enjoy his inheritance, such further condition must be imposed by the Legislature. It is not our place to do so.

## II. *The In Terrorem Clause*

Article Seventh of the will provided: "In the event that any person

or persons shall *oppose or contest* the whole or any portion of this my Last Will and Testament, or shall actively assist in such opposition or contest, then I direct that such person or persons, whether named herein or not, shall receive nothing from my estate." (Italics added.)

The court ruled that by filing his petition for determination of heirship, respondent Basore did not oppose or contest the whole or any portion of the will within the meaning of Article Seventh, and therefore did not forfeit his right to a life income from the residuary trust, as provided in the will.

Appellant contends this ruling is erroneous because it runs counter to the testatrix's intent that respondent receive nothing if he attempted to obtain any portion of the estate free from the restrictions of the trust created for his maintenance.

■ *In terrorem* clauses are valid and are to be given effect according to the intent of the testator, as it appears from the terms of the will and the surrounding circumstances. (*Estate of Bergland* (1919) 180 Cal. 629, 633 [182 P. 277, 5 A.L.R. 1363]; *Estate of Scott* (1963) 217 Cal.App.2d 111, 116 [31 Cal.Rptr. 438].) ■ However, such clauses must be strictly construed (*Lobb* v. *Brown* (1929) 208 Cal. 476, 484 [281 P. 1010]), and no wider scope is to be given to their language than is plainly required (*In re Kitchen* (1923) 192 Cal. 384, 389-390 [220 P. 301, 30 A.L.R. 1008]; *Estate of Bergland, supra,* 180 Cal. at p. 635; *Estate of Seipel* (1933) 130 Cal.App. 273, 276 [19 P.2d 808]). Only where an act comes strictly within the express terms of the forfeiture clause may a breach thereof be declared. (*Lobb* v. *Brown, supra,* 208 Cal. at p. 492; *Estate of Crisler* (1950) 97 Cal.App.2d 198, 201 [217 P.2d 470].)

■ The *in terrorem* clause provided that no person should "oppose or contest" the will or any portion thereof. A clause drawn as narrowly as this may be effective to prevent the contest of a will in the sense of filing grounds of opposition to probate (Prob. Code, §§ 370-374) or filing a petition to revoke probate (Prob. Code, §§ 380-385). *Estate of Scott, supra,* 217 Cal.App.2d at pp. 115-116. However, it is ineffective to prevent an attack on the legality of certain provisions of a will. (*Estate of Zappettini* (1963) 223 Cal.App.2d 424, 427-429 [35 Cal.Rptr. 844]; *Estate of Harrison* (1937) 22 Cal.App.2d 28, 32, 41 [70 P.2d 522]; *Estate of Kline* (1934) 138 Cal.App. 514, 521-523 [32 P.2d 677]; 4 Witkin, Summary of Cal. Law (7th ed. 1960) Wills and Probate, § 244(b), pp. 3232, 3233.)

In his petition for determination of heirship, respondent alleged that he was "entitled to a distribution of that portion of the residue of the estate which exceeds the amount distributable to charity pursuant to the provisions

of Section 41 et sec. [*sic*] of the Probate Code."[8] He then requested that the court determine the rights of all persons in the estate, and to whom and in what proportions distribution should be made. Hence, it appears that respondent did not actually oppose or contest that portion of the will which bequeathed the residue of the estate to appellant and Casa Colina Hospital upon the death of respondent. Rather, he merely sought determination of the legality of such bequest, and asked that the estate be distributed in accordance with that determination.

Citing *Estate of Goyette, supra,* 258 Cal.App.2d 768, appellant contends the petition for determination of heirship cannot be so interpreted. In *Goyette,* the *in terrorem* clause provided that no person should "contest this Will or object to any of its provisions." (P. 771.) The residuary beneficiaries filed objections to a petition for preliminary distribution, alleging that a bequest to charity exceeded the limits prescribed by Probate Code section 41, and requesting that distribution of the excess be made according to the provisions of that section. The trial court ruled that the residuary beneficiaries in effect had objected to one of the provisions of the will, thereby violating the *in terrorem* clause, and the decision was upheld on appeal. (Pp. 772-773.) However, it does not follow that respondent's conduct in the present case violated the *in terrorem* clause as a matter of law.

Whether there has been a contest within the meaning of the language of a forfeiture clause is to be determined according to the circumstances in each case. (*Estate of Dow* (1957) 149 Cal.App.2d 47, 53 [308 P.2d 475]; *Estate of Fuller* (1956) 143 Cal.App.2d 820, 824 [300 P.2d 342].) Here, the trial court concluded that in filing the petition for determination of heirship, respondent did not "oppose or contest" the will within the meaning of the *in terrorem* clause. We cannot say such interpretation was erroneous.

The decree is affirmed.

Files, P. J., and Kingsley, J., concurred.

---

[8]The court ruled that since the will and codicil were executed more than six months prior to testatrix's death, and respondent was neither her spouse, child, grandchild or parent, he was not entitled to any portion of the charitable bequests. Respondent Basore concedes that such ruling was correct. (Prob. Code, §§ 41, 43; *Estate of Barber* (1957) 49 Cal.2d 112, 117 [315 P.2d 317]; *Estate of McDole* (1932) 215 Cal. 328, 330-331 [10 P.2d 75]; *Estate of Yule* (1943) 57 Cal.App.2d 652, 655 [135 P.2d 386].)